JAMES LYON v. M. H. MARTIN, *et al.*

1. NOTE—*Negotiability, Not Destroyed.* The mere incorporation in a note otherwise negotiable of a waiver of all relief from appraisement, stay, exemption and homestead laws, does not destroy its negotiability.

2. NEGOTIABLE NOTE; *Indorsement; Presumption.* Where a negotiable note appears properly indorsed by the payee, and the indorsement is without date, the presumption of law is that it was so indorsed before maturity, and that the plaintiff in an action thereon is a *bona fide* holder, and this presumption is not overthrown by matters which at best do no more than create a suspicion; as for instance, that the counsel of the plaintiff is also the counsel of the payee in other actions; that the general collecting agent of the payee is a witness for plaintiff on the trial, there being no showing as to how he came to be a witness; or that he was not regularly subpenaed; or that the plaintiff when he indorsed the note to a bank for collection waived protest both for himself and the payee.

3. HARVESTER; *Breach of Warranty; Evidence, Competent, and Not.* Where, on a sale of a self-binding harvester, an express warranty is given that the machine is well built, of good material, and capable of cutting, if properly managed, from ten to fifteen acres per day, and on a subsequent trial an effort is made to show a breach of this warranty, it is improper to receive testimony to the effect that the general design of the machine is wrong; but the testimony must be limited to the actual condition of the particular machine, and its capacity for doing the work. If it appears, however, that this machine failed to do the work warranted, it is competent as tending to show that it was properly handled, to prove that other machines of like make and in the hands of other parties familiar with such machinery, also failed to do the work.

*Error from Barton District Court.*

ACTION by *Lyon* against *Martin* and another, to recover on two promissory notes. Trial at the March Term, 1883, and verdict and judgment for defendants. The plaintiff alleges error, and brings the case here.

*W. H. Dodge,* and *E. B. Sherman,* for plaintiff in error.

*Maher & Osmond,* for defendants in error.

The opinion of the court was delivered by

Brewer, J.: This was an action on two promissory notes for $100 each — one due December 1, 1879, and the other December 1, 1880.   The first of these with the indorsements, the other being similar in form, reads as follows:

"$100.                                                    83,004.
              Great Bend, Kas., May 27, 1878.
"For value received, on or before the 1st day of December, 1879, we, or either of us, promise to pay to the order of D. M. Osborne & Co. the sum of one hundred dollars, at the office of G. H. Hulme, in Great Bend, Kas., with interest at ten per cent. per annum from July 1, until paid; and if suit be commenced for the collection of this note, ten per cent. to be added as attorney's fees; and the undersigned waive all relief from valuation, appraisement, stay, exemption and homestead laws.   For the purpose of obtaining the property for which this note is given, I, M. H. Martin, hereby certify that I own in my own name 160 acres of land in section 19, town of 19, 13 W., county of Barton and state of Kansas, with 80 acres improved, and the whole is worth $2,000, which is not incumbered by mortgage or otherwise, except $600; and I own and have on said land $600 worth of personal property over and above all indebtedness.
              (Signed)         M. H. Martin.   [Seal.]"

On the back of the foregoing note appear the following guaranty and indorsements:

"For value received, I hereby guarantee the ——— of the within note at maturity, or any time thereafter, and waive demand, protest and notice of non-payment thereof.—[Signed] G. H. Hulme."

"Pay to the order of James Lyon.—[Signed] D. M. Osborne & Co., by J. H. Osborne, Secretary."

"Pay to the order of J. V. Brinkman & Co.   For collection and remittance, and for value received, I hereby waive demand, protest and notice of non-payment of within note, as well for myself as for the prior indorsers.—[Signed] James Lyon."

The case was tried before a jury, and verdict and judgment were in favor of defendants, and plaintiff alleges error.   The

first question presented is, as to the negotiability of these notes. The district court held that they were negotiable. The ruling is correct. The only point made is, that the note contains a waiver of all relief from valuation, appraisement, stay, exemption and homestead laws; but this does not destroy the negotiability. (*Zimmerman v. Anderson*, 67 Pa. St. 421; 1 Daniel on Negotiable Instruments, § 61.)

In this section, the author thus states the rule :

"The principle is becoming established that if the note is in itself certain and perfect without conditions, and there is merely superadded the provision or declaration that the payee or holder may confess judgment for the maker, or that certain remedies are granted, or rights waived in respect to its collection, then the negotiability of the paper is not destroyed."

The case of *Killam v. Schoeps*, 26 Kas. 310, is cited as against this. But it will be perceived on examination that the note sued on in that case contained an independent contract in reference to other property. It was like a promise to pay money incorporated with a lease of real estate. Where such independent contracts are united in one instrument, the form of the promise to pay money is immaterial; it cannot make the double contract a single negotiable note. But in the case at bar there is no contract independent of the promise to pay. There is simply a waiver of some rights in case the collection of the money has to be enforced by suit.

The second question we shall consider is the claim of plaintiff that the verdict was against the evidence. The claim is that the plaintiff was a *bona fide* holder before maturity, and therefore that he held the notes free from any defense that could be made against the payee. The notes, it will be perceived, were duly indorsed, the date of the indorsement being blank, and the indorsement was not denied under oath. Hence the presumption of law is that the indorsement was made before maturity, and that the plaintiff was a *bona fide* holder; and this of itself compelled a verdict for him unless there was some testimony tending to show that the indorsement was after maturity, or that he did not hold in good

faith. (*Rahm v. Bridge Company*, 16 Kas. 530.) Beyond this presumption plaintiff introduced the testimony of the cashier of the bank of Brinkman & Co., to whom the notes were indorsed for collection, to the effect that each note was received by the bank before it became due, and that at the time of receipt each note was indorsed in full as it appeared on the trial. To overthrow this, this is all that appeared: One of the defendants testified that in the fall or winter of 1879, he saw the notes in the hands of one of plaintiff's counsel, and that when he saw them they were not indorsed to plaintiff. He was not positive as to the date, but thought it was after the first note became due. The counsel to whom he referred testified positively that he received the note October 3, 1879, and returned it November 17, 1879, which was of course before its maturity. Even discrediting the positive testimony of counsel, and giving to the defendant's testimony the fullest weight possible, and it could only tend to show that the first note was not indorsed before maturity. The second note it will be remembered did not fall due until December 1, 1880, which was long after defendant pretended to have seen them.

The other matters which defendants claim to have some bearing on this question are these:

Plaintiff's counsel was the counsel of the payees in other suits; but this proves nothing. There was no testimony tending to show that the payees employed the counsel in this case, or that they were not retained directly by the plaintiff.

Again, counsel, in their brief filed in this court, in an effort to explain the verdict, used this language: "The verdict of the jury seems to result from gross and inexcusable ignorance, or from a determination to defeat the claims of a foreign corporation." But this was long after the trial, and it is not difficult to believe that the explanation suggested is the correct one, and that the jury failed to distinguish between the rights of the plaintiff and those of his indorser.

Again, it is said that the collecting agent of the payees was present at the trial, apparently taking a great interest, and a

witness for plaintiffs, but the record fails to show how he happened to be present or that he was taking any special interest, and only discloses that he was called as a witness. That of itself surely does not justify a verdict that the indorsement was after maturity, or that it was a mere sham and for the purpose of cutting off all defenses.

Still again, it is said that plaintiff in indorsing the notes to the bank waived protest not only for himself, but also for all prior indorsers, and that it is not reasonable to suppose that he would release his claim against a good indorser in his own city, and look simply to unknown makers in a distant state. Obviously such indorsement was for the purpose of saving the costs of the protest, and does not legitimately tend to prove what counsel claim. It may be that there was a general understanding between the payees and the plaintiff, that all notes taken by him should be without recourse upon the indorser, or they may have given him a general waiver of protest on all such notes; so that the mere fact that he took the ordinary means of preventing an accumulation of costs and expenses should not be taken as evidence against the *bona fides* of his holding, or to prove an indorsement after maturity.

Again, it is said that the handwriting of the indorsement to plaintiff is the same as that of his indorsement to the bank for collection. This does not appear from the record, and of course that controls us. Even if it were true, it could hardly have the effect which is claimed by counsel.

These are all the matters they have pointed out; and the very utmost that can be said in respect to all of them put together, is that they possibly raise a suspicion against the *bona fides* of plaintiff's holding, but surely they are not enough to overthrow the legal presumption, sustained as it is by the positive testimony of the cashier of the bank. We think therefore the verdict as to the second, if not the first note, was clearly unsupported by the evidence, and the judgment will therefore have to be reversed, and the case remanded for a new trial.

It will be proper for us to notice another ruling com-

plained of in order to guide in the subsequent trial. These notes were given in part payment of a self-binding harvester, sold by the payees to the defendant Martin. At the time of the sale, this warranty was given:

"All our machines are warranted to be well built, of good material, and capable of cutting, if properly managed, from ten to fifteen acres per day. If, on starting a machine, it should in any way prove defective, and not work well, the purchaser shall give prompt notice to the agent of whom he purchased it, and allow time for a person to be sent to put it in order. If it cannot then be made to do good work, the defective part will be replaced, or the machine taken back, and the payments of money or notes returned. Keeping the machine during harvest, whether kept in use or not, without giving notice as above, shall be deemed conclusive evidence that the machine fills the warranty.

D. M. Osborne & Co."

On the trial, the court ruled that an express warranty having been given, there was no room for the application of an implied warranty. Of this ruling neither party complains, but the court permitted the defendants, in attempting to prove a breach of the express warranty, to introduce the testimony of certain witnesses claiming to be familiar with farm machinery, to the effect that the general design of the harvester was wrong; that in its various parts it was complicated, intricate, and difficult of management. So far as it permitted inquiry into the general design of the machine, and a comparison of that design with that of other machines intended for similar work, we think the court went outside the scope of the express warranty. Waiving any question as to the competency of these witnesses to testify as experts, we think inquiry should have been limited to the machine in controversy: Was it, or was it not, well built, and of good material, and could it do the work warranted? If it failed to do such work, was it, or was it not, properly handled? Perhaps, for the purpose of tending to show that it was properly handled, testimony was admissible that other like machines, in the hands of parties familiar with farm machinery,

also failed to do the work warranted.  Of course this latter testimony is a little remote, but we think it was competent as tending to sustain any direct testimony of defendants as to the manner in which this one was managed and handled.

This is all we think we need say to indicate the proper scope of inquiry in the succeeding trial.  The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.