THE HOLLIDAY STATE BANK, *Appellee*, v. C. B. HOFFMAN, *Appellant*.

No. 17,110.

SYLLABUS BY THE COURT.

PROMISSORY NOTE — *Collateral Provisions — Negotiability*. A promissory note otherwise negotiable, due six months after date, with interest from maturity until paid at the rate of six per cent per annum, contained a recital that certain collateral security was attached thereto the market value of which was stated to be $6250, and contained in addition the following stipulation: "If in the judgment of the holder of this note, said collateral depreciates in value, the undersigned agrees to deliver when demanded additional security to the satisfaction of said holder; otherwise this note shall mature at once." *Held*, that the instrument is nonnegotiable (1) because it contains a promise to do an act in addition to the payment

of money (Gen. Stat. 1909, § 5258); (2) because the date when it is to become due is uncertain (Gen. Stat. 1909, § 5257).

Appeal from Wyandotte court of common pleas. Opinion filed June 10, 1911. Reversed.

*William B. Sutton,* and *William B. Sutton, jr.,* for the appellant.

*E. H. Gamble,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The bank brought this action on a promissory note given by C. B. Hoffman to the Merchants' Refrigerating Company for shares of its capital stock. Hoffman admitted the execution of the note and alleged a total failure of consideration. On the trial he introduced evidence tending to show that the stock for which the note was given was valueless and that he was induced to purchase the same by the false and fraudulent representations of J. E. Brady, president of, and acting for, the refrigerating company. The plaintiff introduced evidence tending to show that it purchased the note in due course without notice of defenses. At the close of the evidence the court directed a verdict for the plaintiff for the amount of the note with interest. The defendant appeals.

The case turns upon the question whether the note is negotiable. It reads as follows:

"$4500.    No. ———.

KANSAS CITY, Mo., Sept. 18, 190—.

"Due ———. Six months after date, for value received I promise to pay to the order of Merchants' Refrigerating Company, Kansas City, Mo., forty-five hundred and $^{no}/_{100}$ dollars at the office of the Merchants' Refrigerating Company, Kansas City, Mo., with interest from maturity until paid at the rate of six per cent per annum. To secure the payment of this note and of any and all other indebtedness which I now owe to the holder hereof, or may owe him at any time before the payment of this note I have hereto attached, as col-

lateral security the following: Stock certificate No. 137 of the capital stock of the Merchants' Refrigerating Company, calling for 50 shares of the stock; par value $5000.

"The above collateral has a market value of $6250.

"If, in the judgment of the holder of this note, said collateral depreciates in value, the undersigned agrees to deliver when demanded additional security to the satisfaction of said holder; otherwise, this note shall mature at once. Any assignment or transfer of this note, or other obligations herein provided for, shall carry with it the said collateral securities and all rights under this agreement.

"And I hereby authorize the holder hereof on default of this note or any part thereof, according to the terms hereof, to sell said collateral, or any part thereof, at public or private sale and with or without notice, and by such sale the pledgor's right of redemption shall be extinguished.        C. B. HOFFMAN."

The provisions of the negotiable instruments law, which it is claimed are applicable to the note, are as follow:

"An instrument to be negotiable must conform to the following requirements: (1) It must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on demand, or at a fixed or determinable future time; (4) must be payable to order or to bearer; and (5), where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty.

"The sum payable is a sum certain within the meaning of this act, although it is to be paid: (1) With interest; or (2) by stated installments; or (3) by stated installments, with a provision that upon default in payment of any installment or of interest the whole shall become due; or (4) with exchange, whether at a fixed rate or at the current rate; or (5) with costs of collection or an attorney's fee, in case payment shall not be made at maturity.

"An instrument is payable at a determinable future time, within the meaning of this act, which is expressed to be payable: (1) At a fixed period after date or sight; or (2) on or before a fixed or determinable future time specified therein; or (3) on or at a fixed period after

the occurrence of a specified event which is certain to happen, though the time of happening be uncertain. An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect.

"An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. But the negotiable character of an instrument otherwise negotiable is not affected by a provision which: (1) Authorizes the sale of collateral securities in case the instrument be not paid at maturity; or (2) authorizes a confession of judgment if the instrument be not paid at maturity; or (3) waives the benefit of any law intended for the advantage or protection of the obligor; or (4) gives the holder an election to require something to be done in lieu of payment of money. But nothing in this section shall validate any provision or stipulation otherwise illegal." (Laws 1905, ch. 310, §§ 8, 9, 11, 12, Gen. Stat. 1909, §§ 5254, 5255, 5257, 5258.)

The defendant contends that under these provisions of the statute the note is nonnegotiable for three reasons: (1) It is not for a sum certain; (2) it is not due at a fixed or determinable future time; (3) it contains promises to do acts in addition to the payment of money.

If for any of the reasons suggested the note is nonnegotiable, the case should have gone to the jury on the evidence offered in support of the plea of a failure of consideration, and, on the other hand, if it be held negotiable it was error to direct a verdict in view of the defendant's evidence which tended to show that the bank was not a holder in due course. Although the failure to submit the issues of fact to the jury requires a reversal, it is necessary to determine the question of the negotiability of the note.

In our opinion the most serious objection to the form of the note, the particular provision which most clearly destroys the negotiable character of the instrument, is the agreement as to matters other than the payment of money. This is the stipulation by which

Bank v. Hoffman.

the maker agrees to deliver, when demanded, additional collateral security to the satisfaction of the holder, in default of which the note shall mature at once. It would hardly be different if the note recited that it was secured by a chattel mortgage upon certain live stock and contained an agreement that in case their value should depreciate and the holder should deem the security insufficient the maker would on demand execute and deliver to the holder a mortgage upon certain real estate for such amount as would satisfy the holder, and that otherwise the note should mature at once. Such an instrument would not be an unconditional promise to pay money but would be a promise to do something in addition thereto, and would fall, as we think this instrument falls, within the principle settled by the case of *Killam v. Schoeps,* 26 Kan. 310. There a note otherwise negotiable in form provided that the property in payment of which the note was given should remain the property of the payee, and in default of payment should be returned to the payee. The sole question involved was whether the instrument was a negotiable promissory note. It was said in the opinion:

"The contract stated in this instrument is not simply a promise to pay money, but a stipulation concerning the title to property, and a promise in reference to the future disposition of such property. It is essential to the negotiability of paper that there is in it but the simple promise to pay money. You may not incorporate with such a promise stipulations and agreements as to other matters, and then say that the absolute promise to pay money lifts the contract into the region of negotiable paper. This is the general rule, and whatever exceptions there may be, this is not one. (1 Daniel, Neg. Inst. § 59.)  .  .  .  Now this instrument touches other matters and contains other stipulations and provisions than those respecting the payment of money. It is a contract in respect to the title to property. It is also a contract for the possession of property, and because of these additional stipulations it is something more than a simple promise to pay money.  .  .  .  There might as well be included in one agreement a contract for the lease of real estate,

or the hiring of chattels, or the performance of labor with an absolute promise to pay a sum certain at a certain time, and then affirm that by reason of this absolute promise the entire contract is a negotiable instrument. This is not the law. Doubtless many of the rules respecting negotiable paper are purely arbitrary, but nevertheless they are well settled, and ought to be rigorously enforced. Among those rules is that of the unity of the contract, the singleness of the promise to pay, and we think no departure should be made from the spirit or letter of those rules." (pp. 312, 313.)

The doctrine of this case has been often approved. (*Lyon v. Martin,* 31 Kan. 411, 413; *Iron Works v. Paddock,* 37 Kan. 510; *Gilmore v. Hirst,* 56 Kan. 626, 629; *De Hass v. Roberts,* 59 Fed. 853, 855; *Lincoln Nat. Bank v. Perry,* 66 Fed. 887, 894.)

The negotiable instruments law, which is merely declaratory of the mercantile law on the subject, contains a provision which, as we construe it, makes the note in the instant case nonnegotiable. Section 5258 of the General Statutes of 1909 reads: "An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable." The section then enumerates certain things which are not to be regarded as falling within the inhibition. None of these exceptions covers such a promise as the one under consideration.

The note is nonnegotiable for the further reason that the same provision renders doubtful and uncertain the time at which it shall become due. If the maker shall fail when demanded to furnish additional security to the satisfaction of the holder the note shall mature at once. It is argued that this is no different in principle from the provision that default in the payment of any installment shall accelerate the maturity of the note, and cases are cited in which we have held that a similar provision will not render the note nonnegotiable. (See *Clark v. Skeen,* 61 Kan. 526.) The negotiable instruments law itself expressly declares that a negotiable instrument may contain provisions of this kind. (Gen.

Bank v. Hoffman.

Stat. 1909, §§ 5255, 5257.)    The distinction between such a stipulation and the one in question lies in the fact that in the one instance the maturity is accelerated by the default of the maker alone and the default is to consist in his failure to pay money.   Here the maturity of the note is to be accelerated by the failure of the maker to do something in addition to the payment of money, and both contingencies are made to depend upon something over which he has not the absolute control. It is within the power of the holder by refusing assent to what the maker has done arbitrarily to make the note due at any time between the date of its execution and six months thereafter.   If the holder is not satisfied with the additional security the note matures at once, and thus the time at which it may mature would depend upon the time at which the holder declared himself dissatisfied with the security delivered by the maker.    The effect of this stipulation is to leave the time when payable uncertain and indefinite.    (*Bank v. Bynum,* 84 N. C. 24; *Brooks v. Hargreaves,* 21 Mich. 254; *Kimpton v. Studebaker Bros. Co.,* 14 Idaho, 552; *Savings Bank v. Strother,* 28 S. C. 504; *Wisconsin Yearly Meeting v. Babler,* 115 Wis. 289; *Continental National Bank v. McGeoch and others,* 73 Wis. 332. See, also, *Iowa Nat'l Bank v. Carter,* 144 Iowa, 715.)

The law of commercial paper, like all other substantive law, is the creature of growth.   Founded on the custom and usages of merchants, it is the combined result of reason and experience slowly modified by the necessities and changes in commercial affairs.    The methods of modern business and the interests of maker and holder alike require the deposit of collateral securities with the power in the holder to sell the same at maturity.    The oft-repeated epigram of Chief Justice Gibson in the opinion in *Overton v. Tyler,* 3 Pa. St. 346, that "a negotiable bill or note is a courier without luggage" (p. 347) has lost much of its aptness since 1846.   The note held nonnegotiable there contained a

Bank v. Hoffman.

warrant of authority in the holder to confess judgment with a release of errors and waiver of appraisement and stay of execution. The statute provides that an instrument otherwise negotiable is not affected by a provision which "(2) authorizes a confession of judgment if the instrument be not paid at maturity; or (3) waives the benefit of any law intended for the advantage or protection of the obligor." (Gen. Stat. 1909, § 5258.) In former opinions this court has frequently referred to the conflict of authority in the decisions respecting the effect of collateral provisions of this character in promissory notes and bills of exchange. (*Lyon v. Martin,* 31 Kan. 411; *Bank v. Gunter,* 67 Kan. 227, 233.) The adoption in recent years of the negotiable instruments law by so many of the states was in response to the general desire for uniformity in respect to commercial paper. The application, however, by the courts of legal principles to particular facts has not reached scientific exactness and never will. It is hardly to be expected, therefore, that the courts of the different states which have adopted the act will always agree in the construction and application of its provisions. Actual uniformity in the law of negotiable instruments will remain a dream more or less iridescent; substantial uniformity is all that can be hoped for. The conclusions we have reached with respect to the instrument in question are in harmony with the former decisions of this court and accord with our view of the proper construction to be given to the language of the statute.

The trial court erred in holding the instrument negotiable and in directing a verdict. The judgment is therefore reversed and the cause is remanded for further proceedings in accordance with these views.