(61 South. 561.)

No. 19,329.

HIBERNIA BANK & TRUST CO. v. DRESSER.

(June 4, 1912. On Rehearing, Feb. 17, 1913.)

*(Syllabus by the Court.)*

1. BILLS AND NOTES (§§ 241, 422*)—INDORSEMENT—NOTICE OF DISHONOR

A note reading, "We, the signers, indorsers, sureties, and all of us, in solido, promise to pay to the order of the Hibernia Bank & Trust Company * * * sixty thousand dollars for the value received, with interest," etc.; indorsed before delivery to the payee, binds the indorsers unconditionally, and operates as a waiver of notice of dishonor.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 542, 547–559, 1196–1208; Dec. Dig. §§ 241, 422.*]

2. BILLS AND NOTES (§ 243*)—INDORSEMENT—NATURE OF OBLIGATION.

Under section 63, Act No. 64 of 1904, known as the "Negotiable Instrument Law," a person placing his signature on a note otherwise than as maker is deemed to be an indorser, "unless he clearly indicates, by appropriate words, his intention to be bound in some other capacity."

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 549, 552, 553; Dec. Dig. § 243.*]

3. BILLS AND NOTES (§ 243*)—INDORSEMENT—NATURE OF OBLIGATION.

In the instant case, the defendant by indorsing the note, which on its face bound him to pay the amount at maturity, without condition or reservation, bound himself in another capacity than that of indorser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 549, 552, 553; Dec. Dig. § 243.*]

Provosty, J., dissenting.

On Rehearing.

4. BILLS AND NOTES (§ 179*)—NATURE AND REQUISITES — "NEGOTIABLE PROMISSORY NOTE."

A negotiable promissory note within the meaning of the negotiable instrument law is

an unconditional promise in writing made by one person to another, signed by the maker engaged to pay on demand, or at a fixed or determinable future time, a sum certain in money to order or to bearer. Where a note is drawn to the maker's own order, it is not complete until indorsed by him. Section 184, Act No. 64 of 1904, p. 147.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 428; Dec. Dig. § 179.*

For other definitions, see Words and Phrases, vol. 5, pp. 4770, 4771.]

5. BILLS AND NOTES (§ 164*)—NEGOTIABILITY —PROMISE TO DO OTHER ACTS.

An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. Section 5, Act No. 64 of 1904, p. 147.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 411-414, 417; Dec. Dig. § 164.*]

6. BILLS AND NOTES (§ 166*)—NEGOTIABILITY —PROMISE TO DO OTHER ACTS.

A promissory note, otherwise negotiable, is rendered nonnegotiable where a stipulation in respect to collateral security is attached with a recital that, should said securities decline in value, the maker of the note agrees to furnish and pledge additional securities satisfactory to the holder, and to attribute, by the payee of the note, to the payment thereof any deposit which the payee may have belonging to the maker, and the pledging of the securities mentioned in the note for another indebtedness of the maker to the payee. Section 5, Act No. 64 of 1904.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 418, 421; Dec. Dig. § 166.*]

7. BILLS AND NOTES (§ 155*)—NATURE AND REQUISITES—TIME OF PAYMENT—"PAYABLE AT DETERMINABLE FUTURE TIME."

An instrument is payable at a determinable future time, within the meaning of the negotiable instrument law, when that time is at a fixed period after date or sight, or on or before a fixed or determinable future time specified therein, or on or at a fixed period after the occurrence of a specified event, which event is certain to happen, though the time of happening be uncertain. An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect. The right given to the holder of a note to call for additional securities, and thus cause the instrument to mature on that call, makes the note payable upon a contingency, and therefore not negotiable. Section 4, Act No. 64 of 1904, p. 147.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 407-410; Dec. Dig. § 155.*

For other definitions, see Words and Phrases, vol. 6, pp. 5245, 5246.]

Breaux, C. J., and Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by the Hibernia Bank & Trust Company against John M. Dresser. From a judgment for plaintiff, defendant appeals. Affirmed.

Charles Payne Fenner, Benjamin T. Waldo, T. E. Furlow, and Howe, Fenner, Spencer & Cocke, all of New Orleans, for appellant. Foster, Milling, Brian & Saal and Robt. H. Marr, amici curiæ, all of New Orleans. McCloskey & Benedict, of New Orleans, for appellee.

LAND, J. This is a suit on a note dated March 17, 1911, for $60,000, to the order of the plaintiff, signed by the "Southern Gravel & Material Company, by J. M. Dresser, Pres.," and indorsed on the reverse as follows:

"Secured by mortgage note of Southern Gravel & Material Company for $100,000, dated 3/17/11, due on or before three years from date.
                                        "J. M. Dresser.
                                        "Geo. W. Neal."

The note thus indorsed was delivered to the plaintiff.

Under a special stipulation embodied in the note, it became due on December 26, 1911, by reason of the failure of the maker to furnish additional satisfactory securities on demand of the payee. No notice of this demand and failure was given to J. M. Dresser.

[1] The contention of the defendant is that he was an indorser, and was discharged by reason of the failure of the plaintiff to give him notice of the dishonor of the note.

The instrument reads, in part, as follows:

"New Orleans, La., March 17, 1911.

"One year after date, we, the signers, indorsers, sureties and all of us, in solido, promise to pay to the order of the Hibernia Bank & Trust Company, at their office, New Orleans, La., sixty thousand and 00/100 dollars, for the value received, with interest thereon at the rate of 7 per cent. per annum, from date until paid."

As above stated the names of J. M. Dresser and Geo. W. Neal appeared on the back of the note when it was issued and delivered to the payee. The language used embraced all signers, indorsers, and sureties, whose names appeared on the instrument. All of them bound themselves in solido to pay the amount of the note at its maturity. The indorsers bound themselves in the same manner and to the same extent as the maker or signer. J. M. Dresser and Geo. W. Neal did not bind themselves as indorsers, but the indorsers, Dresser and Neal, bound themselves to pay the amount of the note at maturity to the Hibernia Bank & Trust Company. Their liability as indorsers was conditional; and, if it was not intended to bind them otherwise, the reference to indorsers and sureties in the body of the instrument becomes meaningless. Such a construction is not admissible.

"When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory." Civil Code, art. 1951.

In the language of Judge Martin, a construction that "corrodes the bowels of the text" is not admissible.

[2] Defendant relies on section 63 of Act No. 64 of 1904, p. 157, relating to negotiable instruments, which reads as follows:

"Sec. 63. A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

[3] In the case at bar we think that this intention is clearly indicated on the face of the instrument.

The question before us has never been considered and decided by this court, and dicta in the cases cited have no weight as authority. In Pugh v. Sample, 123 La. 794, 49 South. 526, 39 L. R. A. (N. S.) 834, the question was one of subrogation of the accommodation indorsers to the rights of a mortgage creditor, who had been paid by the maker with the proceeds of the note. There was no controversy between the holder of the note and the indorsers, who had expressly waived presentment, demand, notice, and protest. In Hackley State Bank v. Magee, 128 La. 1008, 55 South. 656, there was no contention that the parties who indorsed the note had been discharged for want of notice of dishonor. They alleged that the note had been paid. The court referred to them as sureties. The negotiable instrument act of 1904 was not mentioned in the opinion in that case, and it does not appear that the question whether the defendants were indorsers or sureties was an issue in the litigation.

We agree with the learned counsel for the defendant that section 63 of Act No. 64 of 1904 fixed the liability of indorser on any person signing a note or bill, without qualification, otherwise than as maker, drawer, or acceptor. But the same section recognizes that a person so signing may indicate, by appropriate words, his intention to be bound in some other capacity. The learned counsel contends that the defendant's position as indorser was not affected by the words of the instrument which bound him in solido with the maker of the note. The answer is that the defendant promised to pay the note at its maturity, and that no such obligation was incumbent on him as indorser. Section 66 of Act No. 64 of 1904 provides that every indorser, who indorses, without qualification, engages that on due presentment the instrument shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount to the holder, or to any subsequent indorser who may be compelled to pay it. The difference between such a conditional engagement and the de-

fendant's promise to pay the amount of the note, with interest, when it becomes due, is too glaring for discussion.

The plaintiff discounted the note on defendant's promise to pay, and not on his contingent engagement as an ordinary indorser.

We are of opinion that the defendant, by his unconditional promise to pay, waived notice of dishonor. It is unnecessary to decide any other question.

Judgment affirmed.

See dissenting opinion of PROVOSTY, J., 61 South. 563.

On Rehearing.

SOMMERVILLE, J. The Hibernia Bank & Trust Company sues John M. Dresser as indorser on the following note, which indorsement was made by Dresser before the note was issued:

"$60,000.

"New Orleans, La., March 17th, 1911.

"One year after date, we, the signers, indorsers, sureties, and all of us in solido, promise to pay to the order of Hibernia Bank & Trust Company, at their office, New Orleans, La., sixty thousand & 00/100 dollars, for value received, with interest thereon at the rate of 7 per cent. per annum from date until paid. Interest payable semiannually in advance.

"This note is secured by pledge and delivery of the securities mentioned on the reverse hereof. Should said securities decline in value, the maker of this note hereby agrees, within twenty-four hours from demand on him to that effect made by the holder of this note, to furnish and pledge additional securities satisfactory to the holder of this note, to cover such decline. And the failure or refusal by the maker to furnish such additional securities when so called for shall at once mature this note and pledge.

"Should this note not be paid at maturity or when it becomes due, by failure to furnish additional securities as above provided, or for any other reason, the then holder thereof is hereby authorized to sell the pledged securities, at public or private sale without recourse to judicial proceedings, and is hereby irrevocably authorized to transfer any shares of stock, or other securities, on the books of the company issuing same to purchaser under such public or private sale. The proceeds of the sale of said pledged securities shall be applied (1) to the payment of all costs, and commissions for selling, (2) to the payment of this note, in principal and interest and the 5 per cent. attorney fees, below stipulated, and (3) to the payment of any other indebtedness then due or thereafter to become due, by the maker of this note, to the said Hibernia Bank & Trust Company up to the sum of $250,000. The holder of this note shall have the right to purchase the pledged securities at their market value, if there is any market value, or at any judicial or auction sale thereof, or when sold on the stock exchange of New Orleans. Should this note not be paid at maturity or when due as above, or should it become necessary to employ an attorney to make or enforce the same, or should this note be placed in the hands of an attorney for collection, the maker shall pay the fees of such attorney, which are fixed at 5 per cent. on the amount then due on this note, which attorney's fees are secured by this pledge. At or after the maturity of this note, or when otherwise due as above provided, any money, or property of any kind whatsoever on deposit or otherwise to the credit of the maker on the books of said Hibernia Bank & Trust Company shall at once stand applied to the payment of this note, unless it be otherwise paid.

"The securities pledged with this note are also pledged to secure any other obligation of the maker or makers due or hereafter to become due to the Hibernia Bank & Trust Company.          Southern Gravel & Material Co.

"By J. M. Dresser, Pres.

"Due ———."

Indorsed on reverse thereof:

"No. 74000.

"Secured by mortgage note of Southern Gravel & Material Co. for $100,000.00 dated 3/17/11, due on or before three years from date.          J. M. Dresser.

"Geo. W. Neal.

"3/17/11. Interest on within note paid to Sept. 17/11."

Defendant admits that he indorsed the note sued upon in blank before delivery, and that said "note for $60,000, sued upon herein, was matured and became due on December 27, 1911, in conformity to the stipulation therein contained, by failure of the Southern Gravel & Material Company to furnish additional securities within 24 hours in compliance with a demand served upon him by plaintiff on December 26, 1911"; but he denies liability thereon for the reason that he was an indorser on said note, and was entitled to notice of dishonor. On the trial of the cause, it was further admitted by de-

fendant "that on December 26, 1911, demand to furnish additional collateral was made upon J. M. Dresser, as alleged in the petition, without prejudice."

Defendant relies upon section 63 of the negotiable instrument law (No. 64 of 1904, p. 147), notwithstanding the fact that his indorsement was made prior to the time of the issuance of the note. Section 63 of the act is as follows:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

Plaintiff argues that the negotiable instrument law is without application here. That the note sued upon is not a negotiable promissory note.

Section 196 of the negotiable instrument law provides:

"In any case not provided for in this act the rules of the law merchant shall govern."

It is argued that the note sued upon is not provided for in that act; and that it therefore is governed by the rules of the law merchant; that defendant is a surety, and is not entitled to notice of dishonor.

Section 190 of the act under consideration provides that:

"This act shall be known as the negotiable instrument law."

And the title to the act is:

"An Act. A general act relating to negotiable instruments (being an act to establish a law uniform with the laws of other states on that subject)."

And the act makes specific provisions for bills of exchange and negotiable promissory notes. Sections 126, 184, and 191. It makes no mention of other forms of negotiable securities. Section 191 says in part:

"In this act, unless the context otherwise requires, * * * 'bill' means bill of exchange, and 'note' means negotiable promissory note."

And section 196 says:

"In any case not provided for in this act the rules of the law merchant shall govern."

In the present case consideration is confined to negotiable promissory notes.

[4] Section 184 of the act defines a negotiable promissory note as follows:

"A promissory note within the meaning of this act is an unconditional promise in writing made by one person to another signed by the maker engaging to pay on demand, or at a fixed or determinable future time, a sum certain in money to order or to bearer. Where a note is drawn to the maker's own order, it is not complete until it is indorsed by him."

[5] The note sued upon does not meet with the requirements set down in that section of the law:

(1) It is not only an unconditional promise to pay a certain sum in money.

(2) It is not payable at any fixed or determinable future time.

(3) It gives the right to the bank to attribute the maker's deposit, if he has one, to the payment of the note.

(4) And it further stipulates that the security pledged with and for the payment of the note may be used for any other indebtedness of the maker to the bank.

The two first objections noted above were considered in the case of the Holliday State Bank v. Hoffman, 85 Kan. 71, 116 Pac. 239, 35 L. R. A. (N. S.) 390, Ann. Cas. 1912D, 1; and the opinion in that case, in part, is as follows:

"The negotiable instrument law, which is merely declaratory of the mercantile law on the subject, contains the provision which, as we construe it, makes the note in the instant case nonnegotiable. Section 5258 of the General Statutes of 1909 (section 5, Act No. 64 of 1904 of Louisiana) reads: 'An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable.' The section then enumerates certain things which are not to be regarded as falling within the inhibition. None of these exceptions cover such a promise as the one under consideration.

"The note is nonnegotiable for the further reason that the same provision renders doubtful and uncertain the time at which it shall be-

come due. If the maker shall fail, when demanded, to furnish additional security to the satisfaction of the holder of the note, the note shall mature at once. It is argued that this is not different in principal from the provision that default in the payment of any installment shall accelerate the maturity of the note, and cases are cited in which we have held that a similar provision will not render the note non-negotiable. See Clark v. Skeen, 61 Kan. 526, 60 Pac. 327, 49 L. R. A. 190, 78 Am. St. Rep. 337. The negotiable instrument law itself expressly declares that a negotiable instrument may contain provisions of this kind. Gen. Stat. 1909, pars. 5255, 5257 (sections 2, 4, Act No. 64 of 1904 of La.). The distinction between such a stipulation and the one in question lies in the fact that in the one instance the maturity is accelerated by the default of the maker alone and the default is to consist in his failure to pay money. Here the maturity of the note is to be accelerated by the failure of the maker to do something in addition to the payment of money, and both contingencies are made to depend upon something over which he has not the absolute control. It is within the power of the holder by refusing assent to what the maker has done arbitrarily to make the note due at any time between the date of its execution and six months thereafter. If the holder is not satisfied with the additional security, the note matures at once, and thus the time at which it may mature would depend upon the time at which the holder declared himself dissatisfied with the security delivered by the maker. The effect of this stipulation is to leave the time when payable uncertain and indefinite." Authorities.

Section 4 of the negotiable instrument law specially provides that:

"An instrument, payable upon a contingency, is not negotiable, and the happening of the event does not cure the defect."

The Supreme Court of Kansas continues as follows:

"The law of commercial paper, like all other substantive law, is the creature of growth. Founded on the custom and usages of merchants, it is the combined results of reason and experience slowly modified by the necessities and changes in commercial affairs. The methods of modern business in the interest of maker and holder alike require the deposit of collateral securities, with the power in the holder to sell the same at maturity. The oft-repeated epigram of Chief Justice Gibson in the opinion in Overton v. Tiler, 3 Pa. 346, at page 347 (45 Am. Dec. 645), that 'a negotiable bill or note is a courier without luggage,' has lost much of its aptness since 1846. The note held nonnegotiable there contains a warrant of authority in the holder to confess judgment, with a release of errors, and waiver of appraisement, and stay

of execution. The statute provides that an instrument otherwise negotiable is not affected by a provision which (2) authorizes a confession of judgment if the instrument be not paid at maturity, or (3) waives the benefit of the law intended for the advantage or protection of the obligor.' Gen. Stat. 1909, par. 5258 (section 5, Act No. 64 of 1904 of La.). In former opinions this court has frequently referred to the conflict of authorities in the decisions respecting the effect of collateral provisions of this character in promissory notes and bills of exchange." Authorities.

While the adoption of the negotiable instrument law by this and other states was evidently for the purpose of establishing uniformity with respect to commercial paper, we cannot expect the courts of the different states to always agree on the interpretation of that law. But the decision of the Supreme Court of Kansas appears to be in accordance with the law and jurisprudence of this state, and we conclude that the note sued upon here is not governed by the negotiable instrument law. Section 5 of that act declares that "an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable," and that is the exact language contained in section 5258 of the general statutes of 1909 of Kansas.

Section 5 also provides for the inserting of those things which have become ordinary or usual parts of negotiable promissory notes. They may be added to an order or promise to pay money. It says:

"But the negotiable character of an instrument otherwise negotiable is not affected by a provision which:
"(1) Authorizes the sale of collateral securities in case the instrument be not paid at maturity; or
"(2) Authorizes a confession of judgment if the instrument be not paid at maturity; or
"(3) Waives the benefit of any law intended for the advantage or protection of the obligor; or
"(4) Gives the holder an election to require something to be done in lieu of payment of money. But nothing in this section shall validate any provision or stipulation otherwise illegal."

A third objection to the negotiability of the note under the act is that it authorizes

the bank to attribute the maker's deposit with it to the payment of the note. This also is an order to do an act in addition to the payment of money, which, under the statute, renders the note nonnegotiable.

[6] A fourth objection to the note is that it pledges the securities mentioned therein for any other indebtedness of the maker to the bank, and that, too, is an order to do an act in addition to the payment of money. These two last-mentioned provisions, which form parts of the note, are in favor of the bank alone; they are not transferable by it to any subsequent holder. They tend to show that the parties did not intend that the note should be a negotiable promissory note, as defined in the negotiable instrument law, and to be transferred in its entirety by the bank, the payee, to a third person.

We have before referred to section 184 which says that a negotiable promissory note must be payable "after a fixed or determinable future time." Section 4 of the same act defines what "a determinable future time" is. It reads:

"An instrument is payable at a determinable future time, within the meaning of this act, which is expressed to be payable:

"(1) At a fixed period after date or sight; or

"(2) On or before a fixed determinable future time specified therein; or

"(3) On or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain.

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

[7] The note sued upon became payable upon the contingency stated therein; that was, on the failure of the maker to furnish additional securities when called upon by the bank.

The case, therefore, is governed by the law merchant, as set forth in the act, and not by the negotiable instrument law. That act not only does not provide for promissory notes like the one sued upon, but it in terms excludes them.

Dresser indorsed the note sued upon before it was issued; and he thereby became surety thereon. He was not entitled to notice of dishonor.

The judgment and decree of the court heretofore rendered herein is now reinstated and made the judgment of the court.

MONROE, J. I concur in the decree.

PROVOSTY, J., dissents and reserves the right to file reasons later. See 61 South. 572.

BREAUX, C. J. I respectfully dissent and will file reasons. See 61 South. 571.

LAND, J. I concur also for the reasons assigned in the original opinion.