## Finley v. Smith, Banking Commissioner, et al.

(Decided June 15, 1915.)

### Appeal from Hopkins Circuit Court.

1. **Bills and Notes—Negotiable Instruments—Signature by Agent.—** Under Sub-section 19 of Section 3720-b of the Kentucky Statutes, the signature of a party to a negotiable note cannot be made by an agent unless the agent has been duly authorized in writing to make the signature.

2. **Bills and Notes—Negotiable Instruments—Effect of Independent Promise on Negotiable Character of Paper.—**A condition in a note otherwise negotiable, that was secured by collateral, that the maker "will deposit and pledge with said bank such additional security as it may from time to time require, and in default of such deposit this note, at the option of the bank, shall become due and payable," did not make the instrument non-negotiable.

J. A. JONSON and TEAGUE & FRANKLIN for appellant.

LAFFOON & WADDILL for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On October 21, 1913, the following promissory note, purporting to have been made by the appellant, James W. Finley, was executed and delivered to the Madisonville Savings Bank:

"Four months after date, for value received, the undersigned promises to pay to the order of Madisonville Savings Bank, Madisonville, Kentucky, Two Thousand Five Hundred Dollars, without defalcation, negotiable and payable at the banking house of said bank in Madisonville, Kentucky. The undersigned having deposited with the said bank as collateral security for the payment hereof, and of any and all claims and demands of indebtedness of which the undersigned may now or hereafter be liable to said bank, whether directly or contingently, and whether as principal, surety, guarantor, or endorser,

the securities named at the foot of this note, it is further agreed by the undersigned that, in case of depreciation in the market value of the securities herewith or hereafter pledged to secure this note, the undersigned will deposit and pledge with said bank such additional security as it may from time to time require, and, in default of such deposit and pledge for three days after notice to make the same shall be given to, or left at the place of business of the undersigned, this note, at the option of the bank, shall become due and payable. And on default in payment of this note at maturity, or if it shall become payable by failure to deposit additional security, as aforesaid, or in default in the payment of any other liability of the undersigned to the said bank, said bank or its president or cashier is hereby authorized by the undersigned to sell, transfer and deliver said securities herewith pledged, or any part thereof, and any securities which may hereafter be lodged with said bank in lieu of or in addition thereto, and any other property of the undersigned which may come into the possession of said bank for safe keeping or otherwise. Such sale may be public or private or at any Board of Trade, and without either demand or advertisement or notice, which are hereby expressly waived, and with the right to the said bank to purchase any or all of said securities, and without any right of redemption to the undersigned, which is hereby expressly waived, and said bank or its president or cashier is authorized to make, sign and execute for and on behalf of the undersigned any endorsement or act of assignment or transfer necessary or proper to pass the title of the undersigned to said securities. The proceeds of such sale shall be applied to pay the expenses of such sale, to the discharge of this note and the payment of any other liabilities of the undersigned to said bank, and the surplus, if any, shall be paid to the undersigned, and in the event this note has to be collected by an attorney, the undersigned promises to pay a reasonable attorney fee. The securities pledged herewith are as follows, viz., two certificates of the Capital Stock of the Harris Coal Co., being certificates numbers —— for $2,500 each—$5,000.''

Subsequently the bank became insolvent and was put in the charge of the appellee, Smith, as Banking Commissioner. Among the assets of the bank was this note, and upon the failure of Finley to pay it, suit was brought

by the Banking Commissioner, and upon a trial before a jury there was a judgment against Finley, and he appeals.

One of the defenses made by Finley was that he did not sign or authorize in writing any person to sign his name to the note, and therefore there should have been a verdict and judgment in his favor.

What is known as the Negotiable Instrument Law is contained in Section 3720b of the Kentucky Statutes, and Section 19 of this act reads: "The signature of any party may be made by an agent duly authorized in writing." And so if the note in suit was a negotiable instrument within the meaning of this law, and the name of Finley was not signed to the note either by himself or by an agent duly authorized in writing, he is not liable on the note, if Section 19 is given the construction and effect that its reading implies; or, in other words, if a party to a negotiable instrument is not bound unless his signature be made by himself or "be made by an agent duly authorized in writing."

This law was intended to be a uniform law throughout the United States by virtue of its adcption in the same form by the legislatures of the various States, and it has been adopted in a majority of the States substantially, if not exactly, in the same form.

It appears, however, that when the act in the form of its adoption in other States was submitted to the legislature of this State, Section 19 read: "The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose, and the authority of the agent may be established as in other cases of agency." But, for some cause, Section 19 as it now appears was adopted in place of the section that was in the proposed law. The reason for adopting the section that now appears in the law in place of the proposed section is not known, but that the present section is radically different in its meaning and effect from the proposed section is manifest. The section as proposed simply contained the declaration in statutory form of an old and well-recognized principle in the law of agency generally, as well as in the law of agency as applied to commercial paper, while the section as amended prescribes that the authority of the agent must be in writing.

If the signature of a party to a negotiable note could be made by a duly authorized agent as permitted by the proposed section, the fact that he was duly authorized might be shown by parol evidence and by such facts and circumstances as would constitute the maker of the signature the authorized agent of the person whose signature it purported to be. It would not be necessary that the person making the signature should have been authorized in writing to make it. The legislature, however, in the adoption of this law thought proper to provide in Section 19 that the signature of any party to a negotiable note "may be made by an agent duly authorized in writing," and we think that in making this change in the proposed law the legislature must have intended that the signature of a party could not be made by an agent unless the agent had been duly authorized in writing, or else there would have been no reason for making the change. The mere fact that the change indicated was made furnishes in itself convincing evidence of the legislative intent that the signature of a party could not be made by an agent unless the agent was duly authorized in writing.

The argument is made that the use of the word "may" shows that it was not intended that written authority should be indispensable, and that if the legislature had intended to confine this power to an agent who was authorized in writing, the word "must" or the word "shall" in place of the word "may" would have been used. We do not, however, find the reasoning urged in support of this construction satisfactory or convincing. On the contrary, we think that when the legislature made the change indicated in the proposed law the purpose was to limit the power to an agent duly authorized in writing, and that the section is not fairly or reasonably susceptible of any other construction. It may not have been a wise change to have made. It may, in some instances, work harm and injustice in the administration of the law, but if so, the remedy is with the legislature and not the courts.

On a trial of the case the court instructed the jury that if they believed from the evidence "that the name of James W. Finley was signed to the note in evidence by Thomas E. Finley, acting under specific or general authority from J. W. Finley to sign the same, they will find for the plaintiff."

According to our view of the law applicable, this instruction was erroneous, and the jury should have been instructed that unless they believed from the evidence that Thomas E. Finley was authorized in writing by James W. Finley to sign his name to the note, they should find for the defendant. In saying the jury should have been so instructed we assume that the note was a negotiable instrument, and will presently set out the reasons for so holding. Of course, if the note was not a negotiable instrument within the meaning of the negotiable instrument law, then the signing would be controlled by the principles of the common law as expressed in the instruction given by the court and not by Section 19 of the act.

For, as said in Wettlauger v. Baxter, 137 Ky., 362, 26 L. R. A. (N. S.), 804, "If a note is not a negotiable instrument within the meaning of this act, then the rights and liabilities of the parties on it are to be determined by the law as administered with reference to non-negotiable instruments. If it is a negotiable instrument in the meaning of the act, then the rights and liabilities of the parties to it are fixed and determined by the provisions of the act alone."

The remaining question is, was this note a negotiable instrument within the meaning of the Negotiable Instrument Law? This law, in Section 1, provides that "An instrument to be negotiated must conform to the following requirements: (1) It must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on demand or at a fixed or determinable future time; (4) must be payable to the order of a specified person or to bearer." In Section 2 it is said: "The sum payable is a sum certain within the meaning of this act, although it is to be paid, (1) with interest; or (2) by stated installments; or (3) by stated installments, with a provision that upon default in payment of any installment, the whole shall become due; or (4) with exchange, whether at a fixed rate or at the current rate; or (5) with costs of collection or an attorney's fee, in case payment shall not be made at maturity." And Section 5 reads: "An instrument which contains an order or promise to do an act in addition to the payment of money is not negotiable; but the negotiable character of an instrument otherwise negotiable is not

affected by a provision which (1) authorizes the sale of
collateral securities in case the instrument be not paid
at maturity; or (2) authorizes a confession of judgment
if the instrument be not paid at maturity; or (3) gives
the holder an election to require something to be done
in lieu of payment of money. But nothing in this sec-
tion shall validate any provisions or stipulations other-
wise illegal.''

Looking to these pertinent sections for the descrip-
tion of a negotiable instrument, the argument is made
that this note is not a negotiable instrument because,
in addition to containing an unconditional promise to pay
the $2,500 four months after date to the Madisonville
Savings Bank, it contains the further promise that if
the collateral deposited as security for the payment of
the note should depreciate in value, the maker ''will
deposit and pledge with said bank such additional se-
curity as it may from time to time require, and in de-
fault of such deposit * * * this note, at the option
of the bank, shall become due and payable.''

Accordingly it is said that the promise to pledge, if
required, additional security, and the condition that the
note should become due upon the failure to pledge addi-
tional security demanded, take it out of the class of ne-
gotiable instruments, because it is provided in Section
5, *supra*, that ''an instrument which contains an order
or promise to do an act in addition to the payment of
money is not negotiable.''

It will be observed that the note is, in the first place,
an unconditional promise to pay, at a fixed time, a cer-
tain sum of money, to the order of a specified person.
So that the qualities of the paper to which attention is
drawn as rendering it non-negotiable are to be found in
the clauses following what we may call the terms of the
note proper. This arrangement, however, of the matter
contained in the paper does not affect the question
raised, because the whole of the paper must be consid-
ered in ascertaining its character as a negotiable or non-
negotiable instrument.

It is also true that if the independent promise to de-
posit and pledge additional security, and the condition
that upon default in making such deposit the note should
become due and payable at the option of the holder, de-
prive the note of its negotiable character under the
Negotiable Instrument Law, it would follow that the

judgment must be affirmed, for, treating the note as a non-negotiable instrument, the promise to pledge additional security, and the condition that the failure to do this should accelerate the maturity of the paper, did not affect the validity of the paper as a non-negotiable instrument.

It will be observed that under Section 2 the fact that a note is payable in stated installments, with a provision that upon default in the payment of any installment the whole should become due, does not affect its negotiable character. It will also be noticed that Section 5 provides that the negotiable character of a note is unaffected by a provision authorizing the sale of collateral security, or a provision that gives the holder an election to require something to be done in lieu of the payment of money. So that the only provision in this note that can be said not to be expressly authorized by the Negotiable Instrument Law is the clause pledging the maker to deposit on demand additional security under penalty of precipitating the maturity of the paper.

We may, therefore, limit the inquiry involving the negotiable character of this paper to the consideration of two questions: (1) The promise of the maker to pledge, if required, additional security; and (2) the provision that the failure to do this should, at the option of the holder, accelerate the maturity of the paper. This brings before us for decision new questions in the construction of the Negotiable Instrument Law, and it is rather unfortunate that the decisions of other courts of last resort, to which these questions have been submitted, are not harmonious. The purpose of the authors of this law was to secure uniform legislation throughout the United States, on the subject of commercial paper, so that a person in any one State might by examining the law on this subject in his own State, be advised as to the condition of the like law in other States. And, so far as legislation is concerned, it may be said that the desired end to be secured by uniform legislation has been accomplished. But uniform legislation on any subject necessarily loses much of its value and usefulness unless it is followed by uniform construction by the courts to which the legislation is submitted for construction.

This uniformity of construction, however desirable, is scarcely possible of attainment, because a court of last resort, when new questions involving the construction

of statutes are presented, will very reasonably and naturally adopt that construction that it conceives to be proper, while another court of last resort, in considering the same question of construction, might, with the same honesty of purpose, reach an entirely different conclusion. This condition is forcibly illustrated in the conflicting views of the courts upon the particular question now before us. For example, the Supreme Court of Kansas, in the case of Holliday State Bank v. Hoffman, 85 Kan., 71, 35 L. R. A. (N. S.), 390, 25 A. & E. Ann. Cases, 1, held that an otherwise negotiable note, with collateral security attached, which provided that "if in the judgment of the holder of this note such collateral depreciates in value, the undersigned agrees to deliver when demanded additional security to the satisfaction of said holder; otherwise this note shall mature at once," was rendered non-negotiable by this additional promise, and for the further reason, as stated by the court, that the time of the maturity of the note was rendered doubtful and uncertain by the provision that upon the failure of the payee to deliver the additional security the note, at the option of the holder, should mature at once.

On the other hand, the United States Circuit Court of Appeals for the Seventh Circuit, in Kennedy v. Broderick, 216 Fed., 137, 1915 B. L. R. A. (N. S.), 472, ruled that a condition in a note that "if in the judgment of the holder of this note said collateral depreciates in value, the undersigned agrees to deliver when demanded additional security to the satisfaction of said holder; otherwise this note shall mature at once," did not affect its negotiable quality.

Other cases illustrating divergent if not conflicting views of the courts upon this and kindred subjects are: Hunter v. Clark, 184 Ill., 158, 75 Am. St. Rep., 160; Raleigh County Bank v. Poteet, —— W. Va., ——, 1915 B. L. R. A. (N. S.), 928; Fleming v. Sherwood, 24 N. D., 144, 43 L. R. A. (N. S.), 945; State Bank of Halstad v. Bilstad, 162 Ia., 433, 49 L. R. A. (N. S.), 132; Rossville State Bank v. Heslet, 84 Kan., 315, 33 L. R. A. (N. S.), 738; First National Bank of Pomeroy v. Buttery, 17 N. D., 326, 16 L. R. A. (N. S.), 878, 17 A. & E. Ann. Cases, 52; Bell v. Riggs, 34 Okla., 834, 41 L. R. A. (N. S.), 1111; Farmers Loan & Trust Co. v. McCoy, 32 Okla., 277, 40 L. R. A. (N. S.), 177; Taylor v.

American National Bank, 69 Fla., 631, A. & E. Ann. Cases, 1914 A., 309.

Without citation of further authority, we are inclined to adopt the view that the conditions relied on as destroying the negotiable character of this note do not accomplish that purpose. The essential things pointed out in Section 1 of the act are: (1) That the instrument must be in writing, signed by the maker; (2) must contain an unconditional promise to pay a sum certain in money; (3) must be payable on demand or at a fixed future time; (4) must be payable to the order of a specified person or to bearer. And the independent promise in this note pledging the holder upon demand to put up additional collateral did not substantially affect any of these requirements. The promise to strengthen the collateral under penalty of the note maturing at once, did not change the date of its maturity any more than would the provision in a note payable in installments that upon default in the payment of the installment the whole should become due.

We think the promise to do an act in addition to the payment of money that will render the note not negotiable must be a promise that conflicts with some one of the essential characteristics of a negotiable note; or, as applied to the case in hand, it must be a promise to do something that would affect the unconditional promise contained in the body of the instrument at the time fixed for its maturity. The Negotiable Instrument Law, in Section 2, permits a note to be made payable in installments with a provision that upon default in the payment of any installment the whole shall become due. Under this provision, if any installment of a note payable in installments at a fixed time is not paid, this delinquency precipitates the maturity of the note and thereby changes the time fixed for its maturity as certainly as does the stipulation that if the value of the collateral is impaired, other collateral should be supplied or else the note will become due.

It is quite usual to pledge collateral as security for the payment of a negotiable note, and we do not think that any narrow construction of the law should be adopted that would have the effect of impairing the use of this kind of security or that would deny to the holder the right to insist that if the value of the collateral deposited should become impaired, the maker must

strengthen it or else precipitate the maturity of the. paper. This condition in the note is merely supplementary to the fixed and controlling promises and is really nothing more than additional security for the payment of the instrument. It is not, strictly speaking, "an order or promise to do an act in addition to the payment of money," but is rather an order or promise to do an act that will better secure the promise to pay the money stipulated at the time fixed in the note. If this condition or promise would disturb the negotiability of commercial paper the effect would necessarily be to lessen the usefulness of collateral as security, because holders of paper would not be disposed to accept collateral, much of which has a fluctuating value, if they were denied the right to insist that its value should be maintained in an amount sufficient to serve the purpose for which it was accepted.

Being of the opinion that the instrument sued on was negotiable paper, the judgment is reversed, with directions for a new trial in conformity with this opinion.