First National Bank of Bridgeport, Connecticut, Appellant, *v.* Nathan Blackman et al., Copartners under the Firm Name of Nathan Blackman & Company, Respondents.

(Argued October 10, 1928; decided November 20, 1928.)

*Paul Bonynge, Robert J. Sykes* and *Daniel A. Dorsey* for appellant. Payment by the defendants to the warehouse company did not discharge their obligation to the plaintiff. (*Presser* v. *Central Trust & Savings Co.,* 189 App. Div. 721; 232 N. Y. 573; *First Nat. Bank of Newark* v. *Collamer,* 217 App. Div. 249; *First Nat. Bank of Newark* v. *Hauss,* 214 App. Div. 689; *Becker* v. *Hart,* 129 App. Div. 511; *Doubleday* v. *Kress,* 50 N. Y. 410; *Smith* v. *Kidd,* 68 N. Y. 130; *Fellows* v. *Northrup,* 39 N. Y. 117; *Crane* v. *Gruenewald,* 120 N. Y. 274; *Bank of the University* v. *Tuck,* 96 Ga. 456; 101 Ga. 104; *State Nat. Bank of St. Louis* v. *Hyatt,* 75 Ark. 170.) An agency cannot be established by either custom or estoppel

in the absence of knowledge or affirmative acts on the part of the principal. (*People* v. *Bank of North America*, 75 N. Y. 547; *Utica Trust & Deposit Co.* v. *Decker*, 244 N. Y. 340; *Standard S. S. Co.* v. *Corn Exchange Bank*, 220 N. Y. 478; *Marine Bank of Buffalo* v. *Fiske*, 71 N. Y. 353; *Muller* v. *Pondir*, 55 N. Y. 325; *Higgins* v. *Moore*, 34 N. Y. 417; *F. & M. Nat. Bank of Buffalo* v. *Sprague*, 52 N. Y. 605; *Rawson* v. *Holland*, 59 N. Y. 611.)

*Jonah J. Goldstein, Thomas G. Frost* and *Joseph W. Ferris* for respondents. Payment of the notes in controversy to the warehouse company by the defendants had the legal effect of discharging defendants from liability thereon. (*Caton* v. *Andalusia National Bank*, 14 So. Rep. 74; *Cool* v. *Phillips*, 66 Ill. 216; 21 R. C. L. 817; *City Savings & Trust Co.* v. *Peck*, 92 Vt. 310; *Crane* v. *Gruenewald*, 120 N. Y. 274; *Yeoman* v. *McClenehan*, 190 N. Y. 121; *Armour* v. *Michigan R. R. Co.*, 65 N. Y. 111; *Northern Bank* v. *Washington Savings Bank*, 172 App. Div. 341.) The notes in suit herein are non-negotiable instruments. (*Third Nat. Bank* v. *Bowman-Spring*, 50 App. Div. 66; *Manhattan Company* v. *Morgan*, 242 N. Y. 48; *Kimpton* v. *Studebaker Bros. Co.*, 14 Ida. 552; *Great Falls Nat. Bank* v. *Young*, 67 Mont. 328; *Iowa Nat. Bank* v. *Carter*, 144 Iowa, 715; *Puget Sound Bank* v. *Washington Paving Co.*, 94 Wash. 504; *Lincoln Nat. Bank* v. *Perry*, 66 Fed. Rep. 887; *Commercial Nat. Bank* v. *Consumers Brewing Co.*, 16 D. C. App. 186.) Plaintiff is not a holder in due course of the notes set forth in its first and second causes of action herein. (*Hoberg* v. *Sofranscy*, 248 N. Y. 141; *Jacobus* v. *Jamestown Mantel Co.*, 211 N. Y. 161; *Meuer* v. *Phenix National Bank*, 94 App. Div. 331; 183 N. Y. 511; *Martz* v. *State National Bank*, 147 App. Div. 250; *Goshen Nat. Bank* v. *Bingham*, 118 N. Y. 349; *Steinburger* v. *Hittleman*, 93 Misc. Rep. 105; *Manufacturers Commercial Co.* v. *Blitz*, 131 App. Div.

17; *Penning* v. *Giponi*, 86 Ore. 110; *Consterdine* v. *Moore*, 65 Neb. 291; *Hart* v. *Freeman*, 42 Ala. 567.)

KELLOGG, J. The plaintiff seeks recovery upon four promissory notes executed by the defendants and delivered for value to the Eastern States Warehouse & Cold Storage Company, the payee named therein. Two of the notes were dated July 7, 1925, and evidenced, in each instance, a promise to pay the sum of $937.50, with interest. The remaining notes were dated July 16, 1925; one evidenced a promise to pay $1,176.00, with interest; the other a promise to pay $924.00, with interest. The defendants admitted that the payee named in the four notes indorsed and delivered the same to the plaintiff for value. Proof was offered by the defendants that, between July 7, 1925, and October 1, 1925, they paid to the Eastern States Warehouse Company, the payee, sums of money sufficient to satisfy the two notes of July 16, 1925, and one of the notes of July 7, 1925; that the payments were intended to be made and received in discharge of such notes. They also offered to show that the two notes of July 7, 1925, were a duplication; that the payee through fraud advanced the principal sum of one note only; that it nevertheless retained both notes and sold the same to the plaintiff. The defendants admitted, however, that the plaintiff had no knowledge of the fraud. There was also offered, by the defendants, proof of an alleged custom in the warehouse business whereby depositors of merchandise borrow money from warehouse companies upon notes secured by their deposits, and, upon partial withdrawals of the merchandise, make payments *pro tanto* to such companies. The offers were refused and a verdict directed in favor of the plaintiff for the amount of the four notes, with interest. The Appellate Division reversed the judgment entered upon the verdict on the ground that the proof of custom should have been received, and directed a new trial. The plaintiff has appealed,

stipulating for judgment absolute in the event of an affirmance.

The case hinges upon deductions to be made from undisputed proof, oral and documentary, evidencing the following:

The Eastern States Warehouse Company had its principal office, as well as its principal warehouse, at Springfield, Mass. Its bank of deposit was the Chicopee National Bank of Springfield, Mass. On July 8, 1925, the Eastern States Warehouse Company borrowed $25,000 of the plaintiff bank; on July 16, 1925, it borrowed $10,000. On each of these occasions it delivered to the plaintiff its promissory note whereby it promised, in four months from date, to repay the sum borrowed. Each of the notes recited that the maker had deposited, as collateral security for the payment thereof, certain " receivables of the Eastern States Warehouse & Cold Storage Company," of a face value equivalent to the amount of the note, " secured by warehouse receipts for goods stored with said Eastern States Warehouse & Cold Storage Company as per certificate attached herewith." Each contained the provision: " Should the face value of the receivables pledged to secure this note become less than the face value of the same, we hereby agree to deposit additional collateral at once, so that the face value of the receivables deposited shall always be equivalent to the face value of this note."

" The certificate attached " to the $25,000 note of July eighth was a document executed by the Chicopee National Bank, wherein it was stated that the Chicopee Bank had received for the plaintiff, and held for its account, as security for the payment of the note, the notes of variously named customers of the Eastern States Warehouse Company; that these customers had warehoused merchandise, consisting of cases of eggs and tubs of butter, the lot numbers of which were given, with that company and had procured advances thereupon; that

such notes were "secured by warehouse receipts for goods stored in the Eastern States Warehouse & Cold Storage Company." The notes were specifically described in the certificate and totaled $25,303. Listed among the notes so held was a note of Nathan Blackman & Co. for $937.50, stated to have been secured by the deposit of "125 cases of eggs." The note was made by the defendants and is one of the notes now in suit. "The certificate attached" to the $10,000 note of July sixteenth was a similar document, executed by the Chicopee National Bank, certifying to the deposit of similar notes, similarly secured, totaling $10,205.50, to be held as security for the note in chief. Among the notes listed in the certificate were notes of Nathan Blackman & Co., one for $937.50, one for $1,176.00, and one for $924.00, stated to have been secured by a specified number of cases of eggs. These notes were made by the defendants and are the other three notes now in suit. Each of the certificates expressed "the understanding" of the Chicopee National Bank "that we may exchange same from time to time for other notes and warehouse receipts, provided that such notes at all times aggregate in face value the amount of said note of the Eastern States Warehouse & Cold Storage Company."

The Eastern States Warehouse Company had in fact deposited with the Chicopee National Bank, as agent of the plaintiff, the four Blackman notes, to be held as collateral to secure the two notes given by the Eastern States Warehouse Company to the plaintiff. It had also deposited with the Chicopee Bank, as the agent of the plaintiff, four warehouse receipts issued by it for the merchandise deposited by Blackman & Company, which were held as collateral to the Blackman notes. These receipts, curiously enough, were issued, not to the Blackman Company, but directly to the Chicopee National Bank. They recited that certain cases of eggs, identified by lot numbers, had been received by the Eastern States

Warehouse Company "for the account of Chicopee
National Bank, Trustee, Springfield, Mass." In each
receipt the amount of advances made upon the mer-
chandise was stated. The amount, so expressed, cor-
responded with the amount of a Blackman note, which
the receipt accompanied.

The four Blackman notes, which were delivered to the
Chicopee Bank to secure the notes of the Eastern States
Warehouse Company to the plaintiff, and which are now
in suit, were payable on demand to the order of Eastern
States Warehouse & Cold Storage Company at its office
in Springfield, Mass. Each note contained a recital that
certain specified cases of eggs had been deposited by the
makers of the note with the payee as collateral security
for the payment of the note. Each contained a provision
that the makers agreed " to deliver to the said company
additional securities, to its satisfaction, should the market
value of the said securities, as a whole, suffer any decline."
Each contained the further provision that upon the failure
of the makers " to furnish satisfactory additional securities
in case of decline, as aforesaid, or in the case of insolvency,
bankruptcy, or failure in business " of the makers, then,
" this note and all other liabilities " of the makers should
" forthwith become due and payable."

In October, 1925, the Eastern States Warehouse Com-
pany became financially insolvent and at a later date was
adjudged a bankrupt. In the month named the Chicopee
National Bank, learning of the condition of the warehouse
company, sent the Blackman notes, which it had been
holding as the agent of the plaintiff, and the warehouse
receipts securing them, to its principal, the plaintiff. The
Eastern States Warehouse Company defaulted in the pay-
ment of its notes to the plaintiff. Thereafter this action
was brought upon the Blackman notes to procure their
collection.

" An instrument which contains an order or promise
to do any act in addition to the payment of money is not

negotiable." (Negotiable Instruments Law, sec. 24; Cons. Laws, ch. 38.) In many jurisdictions it has been held that a promise to furnish additional collateral, further to secure an instrument for the payment of money, should the collateral originally supplied depreciate in value, does not render the instrument non-negotiable. (*Empire National Bank* v. *High Grade Oil Ref. Co.*, 260 Penn. St. 255; *Kennedy* v. *Broderick*, 216 Fed. Rep. 137; *Hunter* v. *Clarke*, 184 Ill. 158; *Finley* v. *Smith*, 165 Ky. 445; *Mechanics & Metals National Bank* v. *Warner*, 145 La. 1022.) In other jurisdictions a contrary opinion has found support. (*Lincoln National Bank* v. *Perry*, 66 Fed. Rep. 887; *Holliday State Bank* v. *Hoffman*, 85 Kan. 71.) We take the view expressed in the group of decisions first above cited, that such a stipulation is not a promise to do an act " in addition to the payment of money," but a promise, rather, to do an act in aid of, and incidental to, the payment of money. " The question in every case is not whether the act is technically ' additional ' to the payment of money, but whether it is substantially so. If its real purpose is to aid the holder to secure the payment of money and protect him from the risks of insolvency, if it steadies the value of the note, and makes it circulate more readily, then it should not be fatal to negotiability. The promise to furnish more collateral is, it seems to me, such an incidental promise." (Chafee — Acceleration Provisions in Time Paper, 32 Harvard Law Review, at p. 783.) " It is not, strictly speaking, ' an order or promise to do an act in addition to the payment of money,' but is rather an order or promise to do an act that will better secure the promise to pay the money stipulated at the time fixed in the note." (CARROLL, J., in *Finley* v. *Smith, supra.*) In our judgment, therefore, the notes in suit were not rendered non-negotiable by reason of the provisions requiring the giving of additional security. We think, also, that the provisions contained in the notes to the effect that, in case additional security was not.

furnished, the notes should become due immediately, did not affect their negotiability. In some jurisdictions similar provisions for the acceleration of the maturity of paper, payable at a specified future time, have been held destructive of negotiability. (*Iowa National Bank* v. *Carter*, 144 Iowa, 715; *Murrell* v. *Exchange Bank*, 168 Ark. 645; *Mathews* v. *Wilson*, [Cal.] 175 Pac. Rep. 647.) Authority of equal, if not greater, weight holds to the contrary. (*Nickell* v. *Bradshaw*, 94 Ore. 580; *De Hass* v. *Roberts*, 59 Fed. Rep. 853; *State Bank of Halstad* v. *Bilstad,* 162 Iowa, 433; *Chicago Railway Equipment Co.* v. *Merchants Bank*, 136 U. S. 268.)   In the case last cited it was said by HARLAN, J.: " But a contingency under which a note may become due earlier than the date fixed is not one that affects its negotiability."   In this conflict of authority, however, it is not necessary that we now participate.   All of the cases cited deal with time paper; we are dealing with demand paper.   An instrument to be negotiable " must be payable on demand, or at a fixed or determinable future time."   (Negotiable Instruments Law, section 20.)   The volition of the holder or the maker of demand paper is complete; the former may at will declare the paper presently payable; the latter may presently pay if he elects so to do.   Self-evidently, that which is instantly payable, at the will of either of the parties, cannot, through a so-called acceleration clause, be rendered more immediately payable.   Therefore, the essential nature of an obligation " payable upon demand " is not affected by an acceleration clause.   Moreover, the cases which hold that a clause of that nature destroys negotiability are directed to the point that the paper affected thereby ceases to be payable " at a fixed or determinable future time."   Demand paper, although it may not be then payable, is nevertheless made negotiable by the statute.   To such paper, therefore, the argument cannot appropriately be addressed.   We think that the notes in suit were negotiable instruments.   They could be

extinguished only by payments made to their holder, this plaintiff, or by payments made to an accredited agent on its behalf. Moreover, the defense, in the case of one of the notes, that fraud was committed in its making, does not obtain against the plaintiff, a *bona fide* purchaser for value.

The defendants insist that the Eastern States Warehouse Company was the agent of the plaintiff to receive, on its behalf, payments which might be made upon the notes and, therefore, that error was committed in not receiving the offered proof that such payments had been made. In support of their contention, they particularly call our attention to that clause contained in each of the notes given by the Eastern States Warehouse Company to the plaintiff, which provides that " should the face value of the receivables pledged to secure this note become less than the face value of the same, we hereby agree to deposit additional collateral at once, so that the face value of the receivables deposited shall always be equivalent to the face value of this note." They reason that the only imaginable event in which the face value of the " receivables " could become less than the face value of one of the notes in chief was an act of payment upon the notes, constituting the " receivables," made by the makers to their payee, the Eastern States Warehouse Company. To this argument, employed to support the claim of agency, the answer is that the documents themselves outline a possible situation wherein, without payments made to the Eastern States Warehouse Company, the " receivables " might become less than the principal notes. The Chicopee Bank was authorized to exchange the " receivables," and warehouse receipts securing them, " for other notes and warehouse receipts, provided that such notes at all times aggregate in face value the amount " of the Eastern States Warehouse Company notes given to the plaintiff. If the defendants paid to the Chicopee National Bank the amount promised to be paid by one

of the notes, the face value of the collateral notes momentarily might be reduced below the face value of one of the principal notes. The amount paid might be deposited by the Chicopee National Bank to the credit of the Eastern States Warehouse Company provided that company immediately made up the deficiency in collateral by supplying, for the account of the plaintiff, another approved receivable for a like amount, secured by another warehouse receipt. The particular argument, therefore, fails. Otherwise there is not a word of proof, oral or documentary, to establish the proposition that the Eastern States Warehouse Company was authorized to act as the agent of the plaintiff to collect these notes. Certainly, no express words, creating an agency, were ever employed by the plaintiff, nor does the implication arise from any of the transactions between the parties that the plaintiff ever gave its consent that the Eastern States Warehouse Company might act as its agent. The plaintiff knew that the " receivables " were in the possession of the Chicopee Bank, as its agent; that the warehouse receipts were in its possession; that these receipts ran not to the defendants but to the Chicopee Bank. It had the right to assume that no payments would be made except to the bank which held the notes and the receipts. Even if suspicion might momentarily have crossed the mind of a cautious banker, that payments would be offered to the Eastern States Warehouse Company, all thought of danger arising therefrom would immediately have been dispelled when the facts were recalled that if payments were thus tendered, the warehouse company would be unable to exhibit the notes which the defendants might seek to pay, as required by section 134 of the Negotiable Instruments Law, and likewise the defendants, who were not named in the warehouse receipts, would be unable, by presenting the receipts, to establish their right to withdrawals of deposits, in consideration of the payments tendered. We can find nothing in the proof to indicate

that the plaintiff ever authorized the Eastern States Warehouse Company to act as its agent, or ever had reason to suspect that it might undertake so to act.

The Appellate Division has found that the evidence as to custom, offered to be given by the defendants, might have tended to establish an agency in the Eastern States Warehouse Company to receive payments in behalf of the plaintiff. We cannot see that the offered proof would have had any bearing whatever to establish a relationship of agency. The offer made was as follows: " Now, the defendants offer to prove the custom of the trade in the cold storage and warehouse business of depositing merchandise collateral with the warehouse companies, the obtaining of loans from the warehouse company, the payment of these loans to the warehouse company, and the withdrawal of a proportionate share of the collateral at the time of withdrawal." It will be quickly noted that the offer fails to outline such a situation as is found here, viz., the giving of negotiable notes by the depositor to represent the loans made by the warehouse company, the sale of the notes for value to an innocent third party, and a subsequent payment made by the depositor to the warehouse company, not then the holder of the note. It seems to us that the offer was wholly irrelevant to the issues involved and that, therefore, the offered proof was properly excluded. In this view, it is unnecessary to consider what the ruling should have been, had the offer been addressed to a situation, such as existed here. It might be observed, in passing the question, however, that if a custom, appropriate to the situation, could ever be employed to defeat the collection of negotiable paper by a *bona fide* holder, then the integrity and security of such paper would prove to have been far less than the mercantile world has very generally deemed it to possess.

We think that the rulings of the trial court were in all respects correct, and that the plaintiff was entitled to a

verdict in its favor, as directed. The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CRANE, J. (dissenting). I dissent on the ground that the Eastern States Warehouse Co. was the agent of the plaintiff to receive payment. The merchandise stored, for which warehouse receipts were issued, consisted of eggs. The bank taking the collateral warehouse receipts knew, or should have known, that the eggs were to be taken out by the merchants storing them, and sold in the market. They were stored until sales could be made. The storehouse was in Jersey, across the river from the city of New York. The merchants were in the city of New York. The bank which held this collateral was in Massachusetts. When it gave consent to the substitution of collateral, it must have known that the substitution was to be occasioned by the withdrawal of eggs, and could not have expected that upon each withdrawal the parties would have to wait for the mailing of papers from Massachusetts before deliveries of eggs could be made. Business in New York could not be done in any such way. The warehouse company was doing business with the merchants. The banks were doing business with the warehouse company. In fact the banks and the warehouse company were closely identified financially. They had a common interest. The warehouse company received the money in full for all the goods stored, and now this bank seeks to collect the money once again from the merchants. I think under the circumstances as they appear here, considering the nature of the business and the notice which the instruments gave to the bank, that it constituted the warehouse company its agent to receive payment. The loss should fall upon it and not upon innocent third parties.

I also agree with the Appellate Division that it was

competent to prove the method in which egg merchants do business. How can we say that a custom is not material or relevant until we know what it is? What do courts know about the egg business? It is their place to listen and ascertain how merchants conduct business, and frame their decisions accordingly.

CARDOZO. Ch. J., POUND, ANDREWS, LEHMAN and O'BRIEN, JJ., concur with KELLOGG, J.; CRANE, J., dissents in memorandum.

Ordered accordingly.