CITY NATIONAL BANK *vs.* OSCAR A. ADAMS & another.

Hampden.   September 20, 1928. — February 25, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Bills and Notes,* What constitutes negotiable instrument, Holder in due course, Payment.   *Estoppel.*

A promissory note payable on demand to the order of a stated payee is negotiable within the provisions of the negotiable instruments act although it contains on its face a statement that the maker has deposited with the payee a warehouse receipt for certain goods as collateral security "for the payment of this or any other liability or liabilities of the undersigned to" the payee, and agreements in substance, with respect to keeping the payee protected by sufficient security, that, if the maker did not fulfill the agreements, the note in question and all his other liabilities to the payee should forthwith become due and payable without demand or notice, and that the payee might sell the securities and apply the proceeds to the satisfaction of the note and other obligations, with provisions applicable to such sale and an agreement to remain liable for any deficiency which might arise.

If the payee of such a note indorsed and delivered it for a consideration within two days after receiving it to one who for the first time more than a year and five months after its date notified the maker of the indorsement and demanded payment, the indorsee is a holder in due course within the provisions of the negotiable instruments act and entitled to maintain an action thereon against the maker, although the maker, not having notice or knowledge of the indorsement, but without requiring an exhibition and delivery of the note, within two months after the date of the note had paid the amount thereof to the original payee.

CONTRACT by an indorsee against the makers of a promissory note described in the opinion.   Writ dated January 27, 1927.

In the Superior Court, the action was heard by *Broadhurst,* J., without a jury.   Material evidence and facts found are stated in the opinion.   The judge found for the plaintiff in the sum of $1,743.39.   The defendants alleged exceptions.

The case was argued at the bar in September, 1928, before *Rugg,* C.J., *Pierce, Carroll, Wait,* & *Sanderson,* JJ., and afterwards was submitted on briefs to *Crosby,* J.

*F. W. Campbell*, for the defendants.

*A. B. Green*, for the plaintiff.

WAIT, J. This is an action by the holder and indorsee against the makers of a demand note. It was heard by a judge, sitting without a jury. The note was given by the makers for valuable consideration on the day of its date to the Eastern States Warehouse and Cold Storage Company, the payee, and within two days, on or before December 12, 1924, was indorsed by the payee and delivered to the Chicopee National Bank which received and held it for the plaintiff. The Chicopee National Bank at that time was in possession for the plaintiff of a note of the Eastern States Warehouse and Cold Storage Company to the plaintiff for $7,500; and of other notes given by customers of the warehouse company and payable to its order which were held as collateral security for the payment of the $7,500 note. The note in suit was delivered to the Chicopee National Bank to be held with such collateral. That bank remained in possession until October 6, 1925, when it delivered the note for $7,500, and the collateral, including the note in suit, to the plaintiff. On May 20, 1926, the plaintiff notified the defendants that it held their note, and demanded payment. This was the first demand for payment that they had received and the first notice that the note had ever passed from the warehouse company. On January 31, 1925, they had delivered to the warehouse company their check for $1,523.24 in payment of the note and charges for storage and insurance of their goods in its possession. No demand for payment of the note, or for other collateral, or for payment of any other obligation to it by the warehouse company had been made. The defendants had not, nor have they since, failed in business, or become bankrupt or insolvent. The check did not indicate the purpose for which it was given. It was deposited with the Chicopee National Bank to the credit of the warehouse company and was paid the next day. The Chicopee National Bank neither knew nor had cause to know, that it had been given in payment of the note. Neither the plaintiff nor the Chicopee National Bank had authorized the warehouse company to receive

payment of the note on behalf of either bank. The defendant Blake, when he delivered the check, did not ask for the note, and neither he nor any defendant inquired before May 20, 1926, where the note was or who held it. It does not appear, except from recitals in the note, whether any warehouse receipt was, in fact, deposited with the warehouse company, or whether there were other obligations of the defendants to the company or other property of the defendants in its possession at the time of the delivery of the note.

The note read:

Boston, Mass-, Dec. 10th, 1924.

$1485.00

(Insert your location and date on above line)

ON DEMAND after date, for value received      We promise to pay to the order of the

EASTERN STATES WAREHOUSE & COLD STORAGE CO.

at its office in SPRINGFIELD, MASS.

THE SUM OF ——— Fourteen Hundred Eighty-five — — 00/100 Dollars with interest at the rate of — per cent per annum, having deposited with said Company as collateral security for the payment of this or any other liability or liabilities of the undersigned to said Company, due or to become due, direct or contingent now existing, or hereafter arising, the following property, viz.:

THE EASTERN STATES WAREHOUSE & COLD STORAGE Co.'s warehouse receipt.

No. — for

400 Bags Pea Beans Car # 215235

and the undersigned agrees to deliver to the said Company additional securities, to its satisfaction, should the market value of the said securities, as a whole, suffer any decline, and also hereby gives to the said Company a lien for the amount of the said liabilities upon the property or securities given unto or left in the possession of the said Company by the undersigned, and also upon any balance of the account of the undersigned with the said Company.

On the non-performance of this promise; or upon the non-payment of any of the liabilities above mentioned, or upon the failure of the undersigned, forthwith, with or without notice, to furnish satisfactory additional securities in case of decline, as aforesaid, then and in any such case, this note and all other liabilities of the undersigned shall forthwith become due and payable without demand or notice, and full power and authority are hereby given to said Company to sell, assign, and deliver the whole of the said securities, or any part thereof, or any substitutes therefor, or any additions thereto, or any other securities or property given unto or left in the possession of the said Company by the undersigned, for safe keeping or otherwise, at any broker's board, or at public or private sale, at the option of the said Company or of its President or Treasurer, without other demand, advertisement or notice of any kind, which are hereby expressly waived. At any such sale the said Company may itself purchase the whole or any part of the property sold, free from any right of redemption on the part of the undersigned which is hereby waived and released. In case of sale for any cause, after deducting all costs or expenses of every kind for collection, sale or delivery, the said Company may apply the residue of the proceeds of the sale or sales so made, to pay one or more or all the said liabilities to the said Company, as it or its President or Treasurer shall deem proper, whether then due, or not due, making proper rebate for interest on liabilities not then due, and returning the overplus, if any, to the undersigned, who agree to be and remain liable to the said Company for any deficiency arising upon such sale or sales.

(Signed) BENJ. COLE, JR. & COMPANY
Per OSCAR A. ADAMS

No. 6588.

The defendants, in addition to a general denial, and demand for proof of signatures, set up payment; and that no notice of indorsement or assignment was given before full payment was made on or about January 21, 1925, nor until on or about May 20, 1926, and the plaintiff was estopped

to make any claim against the defendants upon the instrument.

It is not denied that on these facts the defendants are entitled to prevail, unless the plaintiff is the holder in due course of a negotiable promissory note.

The judge ruled and held that the instrument was a promissory note, was negotiable, and was negotiated within a reasonable time after its date; that the plaintiff was a holder in due course, and was not estopped from demanding payment; and that the payment on January 21, 1925, by the defendants without requiring surrender of the note was not payment in due course.   He denied requests for findings and rulings in substance to the contrary.   In so doing, he relied upon the negotiable instruments act, and the cases of *Finley* v. *Smith*, 165 Ky. 445, and *Security Bank & Trust Co.* v. *Foster*, 249 S. W. Rep. (Texas) 227.

It is manifest upon the agreed facts that negotiation on December 12, of a demand note made on December 10, is made within a reasonable time, G. L. c. 107, §§ 33, 53; and, so far as that is material, that the plaintiff, to whom it was negotiated within a time not unreasonable after its issue, is a holder in due course.   G. L. c. 107, § 76.   The note, however, in addition to the promise to pay, contained agreements with regard to collateral security:  (1) The warehouse receipt for beans which it declares to be deposited as security is to be held as collateral security also for other designated obligations of the makers to the payee; (2) the makers agree to give to the payee a lien for any existing liability upon their property or securities in the possession of the payee, and upon any balance of the makers' account with the payee; (3) the makers agree to deliver to the payee additional security in certain circumstances and on nonperformance of that promise or the other agreed acts, the note is forthwith to become due and payable without demand or notice; (4) the makers agree that in the event they do not fulfil the above agreements, all their other liabilities to the payee shall forthwith become due and payable without demand or notice; and (5) the makers agree that the payee may sell the securities and apply the proceeds to the satisfaction of the note and other

obligations and they make provisions applicable to such sale agreeing to remain liable for any deficiency which may arise.

This court has not passed upon the effect of such provisions upon the negotiability of a note containing them since the negotiable instruments act became operative. That act, so far as here material, declares that a note to be negotiable must be in writing, signed by the maker or drawer; must contain an unconditional promise or order to pay a sum certain in money; must be payable on demand or at a fixed or determinable future time to order or to bearer (§ 23). It declares that the sum is not rendered uncertain because it is to be paid with interest or "by stated instalments with a provision that upon default in payment of any instalment or of interest, the whole shall become due," or with costs of collection or an attorney's fee in case payment is not made at maturity (§ 24); that an unqualified promise to pay is unconditional, although it is coupled with "a statement of the transaction which gives rise to the instrument" (§ 25); that it is payable in a determinable time if it is expressed to be payable "on or at a fixed period after the occurrence of a specified event which is certain to happen, although the time of happening is uncertain" but that "an instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect" (§ 26). It further provides that an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable but, if otherwise negotiable, the negotiable character of an instrument is not affected by a provision which authorizes the sale of collateral securities or a confession of judgment in case it is not paid at maturity, or waives the benefit of any law intended for the advantage or protection of the obligor, or gives the holder an election to require something to be done in lieu of payment of money (§ 27). These provisions meet objections which, under our earlier law, might have been fatal to the negotiability of the note in suit. Either by their express words, or by the construction which has been put upon them in jurisdictions which have adopted the negotiable instruments act by decisions more numerous or of greater persuasive force than those which have reached

a different conclusion, they establish that, under the law now in force, the note is negotiable.

The negotiable instruments act was enacted in an effort to secure uniformity throughout this country in the law relating to the creation, transfer, interpretation and use of these instrumentalities of commerce. This court in *Union Trust Co.* v. *McGinty*, 212 Mass. 205, 206, 207, has announced as its duty so to interpret the act as to give effect to the beneficent design of the Legislature; "to adhere as closely as possible to the obvious meaning of the act without resort to that which had hitherto been the law of this Commonwealth, unless necessary to dissolve obscurity or doubt." There is such conflict in the interpretation given the provisions that an instrument is not negotiable which contains an order or promise to do any act in addition to the payment of money, or an order or promise which accelerates payment, and thereby may be said to render the time of payment uncertain. In *Finley* v. *Smith, supra,* and *Security Bank & Trust Co.* v. *Foster, supra,* the courts of Kentucky and Texas in well-reasoned opinions, have followed the rule that to render a note nonnegotiable the additional promise must be a promise to do something that would affect the unconditional promise contained in the body of the instrument at the time fixed for its maturity, and would conflict with some one of the essential characteristics of a negotiable note. They refused to follow *Holliday State Bank* v. *Hoffman,* 85 Kans. 71, an earlier decision which reached the opposite result that any additional promise, or any provision which might accelerate payment and thus render the time of payment uncertain, destroyed negotiability.

Since the argument on these exceptions, three cases have been decided in the Court of Appeals of New York which sustain the negotiability of notes such as that before us. In *First National Bank of Bridgeport* v. *Blackman,* 249 N. Y. 322, the notes in question were almost identical with that held by the plaintiff. The court held that the weight of authority sustained their negotiability, and that the provisions in addition to the definite promise to pay on demand the sum fixed on the face of the note should not render the

note nonnegotiable since they merely aided the holder to secure payment, protected him from risks of insolvency, steadied the value of the note and made it circulate more readily. In *Enoch* v. *Brandon,* 239 N. Y. 263, that court held that a bond was not rendered nonnegotiable by the addition of reference to a trust instrument dealing with collateral security. The test there applied is whether in fact the additional agreement with regard to collateral security affects the definite promise to pay on or before a fixed time. If it does not, it is not such an order or promise to do any act in addition to the payment of money as renders the instrument nonnegotiable within the meaning of the statute. See also *Springfield National Bank* v. *Thos. J. May Co. Inc.* 249 N. Y. 591. Negotiability has been sustained also in *Kennedy* v. *Broderick,* 216 Fed. Rep. 137; *West Point Banking Co.* v. *Gaunt,* 150 Tenn. 74; *Mechanics & Metals National Bank* v. *Warner,* 145 La. 1022; *Empire National Bank* v. *High Grade Oil Refining Co.* 260 Penn. St. 255; *First National Bank of Bridgeport* v. *Blackman,* 223 App. Div. (N. Y.) 155, affirmed on this point in the Court of Appeals; *Louisville Banking Co.* v. *Gray,* 123 Ala. 251. To the contrary are *Strickland* v. *National Salt Co.* 9 Buch. 182; *Hibernia Bank & Trust Co.* v. *Dresser,* 132 La. 532; *Commercial National Bank of Chicago* v. *Consumers' Brewing Co.* 16 App. D. C. 186.

The weight of authority is in favor of negotiability where, as here, no essential character of the note is affected but the additional promises relate to the security and do not render the promised payment uncertain in amount or subject to a possibility that it cannot be required.

The note in this case is a demand note. It is difficult to appreciate how payment of a demand note can be accelerated by breaches of a collateral agreement. The requirement that they be performed is a demand on the note. See *First National Bank of Bridgeport* v. *Blackman, supra.*

The sentence of G. L. c. 107, § 26: "an instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect" is to be construed to apply to a contingency which may never happen. If the

event is certain to occur though the moment of happening is uncertain, the contingency is not fatal. Such was our law before the statute, *Cota* v. *Buck,* 7 Met. 588; *Taylor* v. *Curry,* 109 Mass. 36. St. 1888, c. 329, which is embodied in § 26, cl. 3, expressly provided that "no written promise to pay money shall be held not to be a promissory note, or not to be negotiable for the reason that the time of payment is uncertain: provided, that the money is payable at all events and at some time that must certainly come." In the note here in question no event is contemplated in which payment might not be due. At some time, sure to arrive, payment must be made. *Goodfellow* v. *Farnham,* 236 Mass. 453. The difficulty in applying the law arises not from the rule, but out of the varying language of the instruments. In *Central National Bank* v. *Hubbell,* 258 Mass. 124, and *Pierce, Butler & Pierce Manuf. Corp.* v. *Daniel Russell Boiler Works, Inc.* 262 Mass. 242, agreements additional to the promise to pay imported into the instruments contingencies in which no payment of the promised sum would be due; and thus, in the former case, destroyed the instrument as a promissory note, and, in the latter, took away its negotiability. *Old Colony Trust Co.* v. *Stumpel,* 247 N.Y. 538. We find nothing in our decisions since the negotiable instruments act became law which requires us to declare the rulings here questioned to be error.

The agreed facts preclude finding that the plaintiff is estopped from asserting that the defence of payment is not open. Payment to extinguish a negotiable note must be made to a holder in due course. G. L. c. 107, § 142. The person paying has a right to demand that the note be exhibited to him and on payment be delivered to him (§ 97). *Arnold* v. *Dresser,* 8 Allen, 435. *Legg* v. *Vinal,* 165 Mass. 555, 556. One who pays without seeing it or demanding its production is not acting with reasonable prudence. See *Wilbour* v. *Turner,* 5 Pick. 526. It is agreed that on January 21, 1925, the warehouse company was not the holder of the note; that neither the Chicopee National Bank nor the plaintiff had authorized it to receive payment; and that none of the defendants requested the production of the note or in-

quired its whereabouts. No basis appears for a claim of estoppel. *First National Bank of Bridgeport* v. *Blackman, supra.*

The requests of the defendants were not applicable with relation to a negotiable note, and were denied properly. The order must be

*Exceptions overruled.*