FIRST NATIONAL BANK OF BRIDGEPORT, CONNECTICUT, Plaintiff, *v.* HARRY LEVINE and Another, co-partners doing business under the firm name and style of Levine & Zillman, Defendants.

Supreme Court, New York County, February 5, 1930.

*Bonynge & Barker* [*Paul Bonynge* and *Robert J. Sykes* of counsel], for the plaintiff.

*Goldstein & Goldstein* [*Jonah J. Goldstein* and *Joseph Ferris* of counsel] for the defendants.

UNTERMYER, J.   A similar case, arising out of a transaction between this plaintiff and another defendant, was considered by the Court of Appeals in *First National Bank of Bridgeport* v. *Blackman* (249 N. Y. 322).   It is not necessary, therefore, to consider the case except in those aspects in which it may differ from the *Blackman* case, and consideration of which is not precluded by that decision.   By that decision the defendants are not precluded from showing that the Eastern States Warehouse Company was the agent of the plaintiff to receive payment of the note upon which this suit is instituted, nor from challenging the authority of its treasurer to indorse that note.

There can be no question here of an ostensible agency, because it does not appear that the defendants knew of the transfer, or that the Eastern States Warehouse Company assumed to act otherwise than as the holder of the note.   On the contrary, it is alleged in the amended answer that the defendants had no notice of the transfer of the note to the plaintiff, and it follows that they could not have made payment to the warehouse company in the belief that the warehouse company was receiving payment as agent for the plaintiff. (*Bank of the University* v. *Tuck*, 96 Ga. 456; 23 S. E. 467; Mechem Outlines of Agency, p. 83.)   A party cannot be said to have been misled by the apparent scope of an agency of the existence of which he was not aware.   Successfully, therefore, to interpose the defense of payment here, the defendants must establish such an actual and existing agency as to justify the finding that payment to the warehouse company was the equivalent of payment to the plaintiff.

The evidence does not justify such a finding.   The parties deposited the defendants' note with the warehouse receipt attached, together with other notes, with the Chicopee National Bank of Springfield.   By the certificate of deposit the Chicopee Bank was expressly authorized to surrender any of these notes, together with the corresponding warehouse receipt, in exchange for other notes of an equivalent amount, similarly secured.   The testimony of the plaintiff's president shows, moreover, that the plaintiff authorized the Chicopee Bank, as its agent, to receive payment or part payment of these notes, and payment to the Chicopee Bank would, therefore, have constituted payment to the plaintiff.   But the evidence does not show that the plaintiff authorized the Chicopee Bank to delegate the execution of this function

to the warehouse company, or in any other way authorized the warehouse company to receive payment of the note.

Nevertheless, the Chicopee Bank, as the testimony of Gilmore, its assistant cashier, indicates, seems to have tolerated, if, indeed, it did not authorize, the warehouse company to make collections on the notes against releases of the merchandise. To the extent that the Chicopee Bank did this without instructions from the plaintiff bank, it did not bind its principal. Payments made by the defendants to the warehouse company under these circumstances did not, therefore, discharge the note.

The conclusion that the plaintiff did not authorize the Chicopee Bank to delegate to the warehouse company power to receive payments on the notes and to release collateral is confirmed by the situation of the parties here. The Chicopee Bank was created depositary, to make exchanges or receive payment of the notes for convenience of the parties, and in order that such transactions would be in the hands of a responsible and solvent institution. Had it been intended to permit the Chicopee Bank to delegate this function to the warehouse company, there was no purpose to be served in creating an intermediary or depositary to do this very thing. The notes and the collateral might as well have remained in the possession of the warehouse company, and the depositary dispensed with altogether. I am unwilling to assume that the plaintiff ever contemplated a method of payment which would have rendered futile the very safeguards which the parties had set up. Particularly under the circumstances which existed here, the power delegated by the plaintiff to the Chicopee Bank to receive payments on the notes did not include authority to delegate that power to another. (*Fellows* v. *Northrup*, 39 N. Y. 117; *McConnell* v. *Mackin*, 22 App. Div. 537; *Lyon* v. *Jerome*, 26 Wend. 485; 1 Mechem Agency, p. 226.)

It remains to consider whether the indorsement by the treasurer of the warehouse company was sufficient to constitute a negotiation of the note. In the absence of specific authority, the treasurer of a corporation has no power to indorse. (*Hoberg* v. *Sofranscy*, 248 N. Y. 141; *Jacobus* v. *Jamestown Mantel Co.*, 211 id. 154.) But the by-laws of the warehouse company (section 4) expressly authorized its treasurer to indorse notes " unless some other person be designated by the directors for these purposes or any of them." I do not find that this authority was ever abrogated. The subsequent resolutions of the board of directors of October 9, 1923, were applicable only to the three banks specified therein. The resolutions adopted by the board on February 12, 1924, expressly provide that either the president or the treasurer may indorse all notes. The

further resolution of that date, which authorizes, but does not require, the assistant treasurer to countersign, is not a limitation on the general power of the treasurer to indorse. That resolution, no doubt, was intended to authorize the assistant treasurer to countersign in respect of the three banks specified in the resolution of October 9, 1923. It did not otherwise limit the power of the treasurer previously established by the by-laws to indorse.

I hereby direct a verdict in favor of the plaintiff and against the defendants in the sum of $2,376, with interest thereon from July 19, 1924. A stay of execution for thirty days after service of a copy of the judgment and notice of entry upon their attorneys is hereby granted to the defendants, and sixty days to make a case.