MILFORD TRUST CO.
*vs.*
CLARENCE R. LAKE ET AL.

Superior Court        New Haven County        File No. 61645

MEMORANDUM FILED DECEMBER 20, 1941.

*T. Holmes Bracken,* of New Haven, for the Plaintiff.

*Herbert L. Emanuelson,* of New Haven, for the Defendants.

O'SULLIVAN, J.   The complaint counts on a collateral de-mand note for $7,500, signed by the defendant, which note has belonged to the plaintiff since its execution and upon which an unpaid balance has been due since February 17, 1933.   The special defense, attacked by demurrer, alleges the six-year statute of limitations.   If the note is negotiable, the defense is good; otherwise, not.

It is claimed by the plaintiff that in as much as the note carries a provision for an act to be done by the defendants, as makers, in addition to the payment of money, negotiability of the instrument is destroyed by virtue of section 5 of the Uniform Negotiable Instruments Act (Gen. Stat. [1930] §4322), which reads in part: "An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable."

Among other things found in the body of the note is the following excerpt: "In the event that the market value of the collateral deposited hereunder shall at any time become less than one hundred twenty-five per cent (125%) of the amount of the face of the note, the undersigned agree to furnish additional collateral, without notice, sufficient to pro-vide said margin of security; and upon request at any time by any officer of said Bank or by the holder hereof, the under-signed agree to furnish additional collateral."

The issue, as limited by the argument, is simply this: does the provision as to the agreement to furnish additional se-curity, under certain conditions, make the note non-negotiable, in view of section 4322 of the General Statutes, Revision of 1930.

At first blush, it would appear that the answer should be in the affirmative, and, in fact, some cases so hold.   *Holliday State Bank vs. Hoffman,* 85 Kan. 71, 116 Pac. 239; *Nussear vs. Hazard,* 148 Md. 345, 129 Atl. 506.   However, in 1915, a real turning point was reached in the general attitude of courts upon the precise question involved in the present dis-cussion.   In that year, the Kentucky court, in *Finley vs. Smith,* 165 Ky. 445, 453, 454, 177 S.W. 262, 266, expressed the views that "we think the promise to do an act in addition to the payment of money that will render the note not negotiable must be a promise that conflicts with some one of the essential characteristics of a negotiable note; or, as applied to the case in hand, it must be a promise to do something that would affect

the unconditional promise contained in the body of the instrument" and "this condition in the note is merely supplementary to the fixed and controlling promises and is really nothing more than additional security for the payment of the instrument. It is not, strictly speaking, 'an order or promise to do an act in addition to the payment of money', but is rather an order or promise to do an act that will better secure the promise to pay the money stipulated at the time fixed in the note."

This decision in the *Finley* case was followed in *Security Bank & Trust Co. vs. Foster* (Tex. Civ. App.), 249 S.W. 227 (reversed on other grounds); *First National Bank vs. Blackman*, 249 N.Y. 322, 164 N.E. 113; *City National Bank vs. Adams*, 266 Mass. 239 [reported as *City National Bank vs. Roberts*], 165 N.E. 470.

The line of reasoning in these later decisions is more impressive, in the light of the liberal manner which Connecticut courts construe the Act. *Austin, Nichols & Co., Inc. vs. Gross*, 98 Conn. 782. The primary purpose of the Legislature in adopting the Uniform Negotiable Instruments Act was to obtain a uniformity of basic principles applicable to financial paper so essential to and so widely circulated in the business world. The simple form of negotiable instrument has been greatly departed from, as commercial needs have arisen. Various influences at work in the field of business have transformed the concise and modestly-worded instrument into a variety of types of paper to meet the legitimate expansion of the credit system. To cope with the demands of trade which require almost the same attribute of vast quantities of financial paper that characterizes money, the trend of judicial construction has been to hold as unobjectionable provisions analogous to that embodied in the instant note, unless in some material way it affects the very bowels of negotiability. "The question in every case is not whether the act is technically 'additional' to the payment of money, but whether it is substantially so. If its real purpose is to aid the holder to secure the payment of money and protect him from the risks of insolvency, if it steadies the value of the note, and makes it circulate more readily, then it should not be fatal to negotiability. The promise to furnish more collateral is . . . . such an incidental promise." *Chafee, Acceleration Provisions in Time Paper*, 32 Harv. Law Rev. 747, at page 783.

If my neighbor gives me a note wherein he promises to pay $1,000 and to paint my house, there would obviously be a conflict with section 4322. But if his note carries a promise to pay only a certain sum of money, the additional promise in the note to furnish more collateral, when required, is, in effect, entirely incidental to the main promise.

Preferring to follow the reasoning outlined above, I must reach the conclusion that the plaintiff's note is negotiable. It naturally follows that the demurrer should be overruled.